## SUPREME COURT.

### JAMES MCGRATH, administrator, &c. agt. THE HUDSON RIVER RAILROAD COMPANY.

In actions for damages arising from *negligence*, the plaintiff, to sustain his action, must prove defendants' negligence, and the plaintiff's freedom from any negligence contributing to the injury. *Per* HOGEBOOM, J.

The facts may be so clear and decided that the inference of negligence is irresistible; but where either the facts or the inference to be drawn from them are in any degree *doubtful*, the whole matter should be submitted to a jury under proper instructions as to the law. *Per* HOGEBOOM, J.

In actions for *causing death*, the doctrine is laid down in general terms that to sustain the action, it must appear that the negligence of the *defendants alone* caused the injury. If the negligence of the deceased contributed, the action cannot be maintained. The meaning of such negligence, and the different degrees of negligence defined. *Per* PECKHAM, J.

As the law does not exact of persons passing on or over a public street or thoroughfare, though a railroad may cross it on the same surface, *extreme care or diligence*, it does not deprive the party injured of redress, though he was guilty of *slight neglect*, which is the absence of extreme care, though that slight neglect contributed to his injury. *Per* PECKHAM, J.

*Held*, that the *facts*, as proved on the trial in this case, upon which the judge, without deciding the question of defendants' negligence, *non-suited* the plaintiff, on account of negligence alone on the part of the deceased, whom the plaintiff represented, did not authorize the withholding of the case from the jury, as it was in effect saying that there was no aspect of the case in which it could be considered, which would justify a verdict for the plaintiff.

McGrath agt. The Hudson River Railroad Co.

(GOULD, J., *dissented* in all three of the foregoing cases, holding that in any given case the *facts* being proved, whether those *facts constitute carelessness* is a question of *law, for the court;* and where *carelessness* on the part of the deceased has been *proved,* the question of *comparative negligence* as between the parties is not open, and cannot, by settled law, be considered; it is therefore useless to give details to show that he or she *was not so very careless as he might have been,* or that the railroad company might have been more careful than it was; or that a locomotive is a *dangerous thing to run against;* the conclusion of law being, on the latter fact, that persons must be careful and not run against it.)

*Albany General Term, March,* 1860.

GOULD, HOGEBOOM *and* PECKHAM, *Justices.*

THIS action is brought under the act of 1847, as amended by the act of 1849, to recover damages for death caused by the negligence and improper conduct of the defendants and their agents. The cause was tried at the Rensselaer circuit on the 9th day of February, 1857, before Justice GOULD and a jury. The plaintiff was non-suited.

The evidence shows that in June, 1855, the deceased was killed by the cars of defendants, at the city of Troy, while she was in the act of passing on foot the railroad crossing over Fourth street in that city. At that point, the defendants had two tracks, upon one of which, at the time of the injury, a train was passing rapidly south, and one, upon the other and east track, was slowly backing north. The girl was traveling from the south, on the east side of Fourth street, and as the down train passed had reached the middle of the east track, when struck by the backing train and killed. She was about twelve years of age. No whistle was blown or bell rung upon the backing train. The bell on the down train was rung. The flagman was on the west side of the track, the flag house being on the east side. At the time of the accident, a man was standing on the rear platform of the backing train, but was not at the brake, which was on the east side of the platform, he being on the west side and looking west.

The proof shows that the occurrence took place in the

south part of the city of Troy, just at the point where the Union railroad leaves Fourth street, passing towards Hill street, as shown on the map attached to the case.

The occurrence took place about 9 o'clock in the forenoon, the weather fine and clear. This road has a double track, and just before a train of cars passed down (south) on the west track while the train that run over the girl was being backed up (north) on the east track. No whistle was sounded or bell rung upon the backing train. The bell and whistle of the down train were both sounded. The backing train was going slower than an ordinary walk. There was at the time a man standing on the platform of the cars, but not at the brake ; he was at the west side of the platform and the brake at the east.

But two witnesses were sworn who saw the girl before the occurrence, Nicholas Mahar and Stephen Myers.

Mahar testified : "I first saw the girl after the train on the west track had passed down—had passed me ; she was then coming up Fourth street ; she was pretty near the flag house, a little beyond the flag house towards the track ; she was on the track when I first saw her ; she was facing up street ; the backing train was within two or three feet of her ; I thought she was almost on the rail, so near the rail that she was just stepping on to it ; the girl was off the track, outside the track when she was hit ; the cars hit her and tumbled her on to the track ; I was about twelve yards from her when she was hit, maybe more ; I went up to the girl ; she was alive when taken from under the cars ; was dead when I left."

Myers testified : "I was on Fourth street, east side of the track when I first saw the girl ; I was, I should think, between three and four feet from her ; she was on the track between the two rails ; the cars were between three and four feet of her ; I was passing in the same direction she was ; I observed the train that was backing up ; I had got within three or four feet of it when I observed it ; I

saw the cars and the girl on the track at about the same time; the girl and I were on the east side of Fourth street; the girl was killed near the line of the east sidewalk (Fourth street,) within the railroad track. The gore west of Fourth street is open, no buildings on it; I saw the girl take two steps; she raised her foot and put it down and raised it again; she *appeared to be walking west towards the train going down*; I did not see anything of the girl until about the instant she was struck; I did not see the cars until about the instant they struck her."

Upon this testimony the presiding judge, on motion of the defendants' counsel, non-suited the plaintiff, upon the ground "that the evidence showed the deceased was guilty of negligence which contributed to her death," and refused to allow that question or any of the questions of fact to be submitted to the jury. The plaintiff duly excepted, and the case comes here upon the exceptions taken at the trial.

W. A. Beach, *for plaintiff*.
T. M. North, *for defendants*.

Hogeboom, Justice. In actions for damages arising from negligence, plaintiff must prove defendants' negligence, and plaintiff's freedom from any negligence contributing to the injury.

In this case, the judge, without deciding the question of defendants' negligence, non-suited the plaintiff on account of negligence on the part of the child. He refused to submit the question to the jury as to the latter point, therefore substantially holding that a verdict for the plaintiff would have been set aside as unwarranted by the evidence.

What constitutes negligence is often, perhaps generally, a difficult question to decide. It is determined, for the purposes of a court and jury by an inference of the mind from the facts of the case; and as minds are differently

constituted, the inferences from a given state of facts will not always be the same. The facts may be so clear and decided that the inference of negligence is irresistible; but where either the facts or the inference to be drawn from them are in any degree doubtful, the better way is to submit the whole matter to a jury, under proper instructions as to the law. This is the more necessary in cases of negligence, because of the great variety of considerations which enter into that question.

The difficulty is increased by the fact that negligence is of different degrees, and because the fact whether negligence is slight, ordinary or gross, depends upon the peculiar circumstances of each case. The same facts might constitute great negligence in one case, which would scarcely amount to slight negligence in another.

Again, negligence, which is nothing more than the want of care,—proper care,—is more or less affected by the conduct or action of the opposing party. It is not always negligence to cross a railroad track at times when a train is not due or cannot be reasonably expected to pass, nor to cross a railroad track without looking for a train when no signal of its approach is given by the ringing of a bell or otherwise.

It may not be negligence, that is a degree of negligence which shall deprive a party of damages, to cross a railroad track immediately after a train has rapidly passed with much noise and ringing of bells, although another train, giving no signal of its approach, may be noiselessly approaching from an opposite direction on a contiguous and parallel track.

Whether such conduct is negligence in this particular case, must depend upon a consideration of all the circumstances, and is a conclusion to be deduced from a careful and prudent examination of all the facts and the legitimate inferences to be drawn therefrom. Ordinarily, therefore, it should be left to a jury to determine, and their

determination, when founded upon conflicting evidence, or upon the uncertain deductions to be derived from particular facts more or less clearly established, cannot generally be disturbed.

In this case, I am of opinion that if the noise and ringing of bells attending the descending train passing rapidly across a public thoroughfare was so great as not only naturally to attract the attention of a person of ordinary caution, approaching from a nearly opposite direction, but naturally to make such person unaware of the approach of a train coming with very little noise from an opposite direction and giving no signal of its approach, an injury inflicted by the latter train is not the result of negligence practised by the party receiving the injury in such a sense as deprives him or his representatives of an action for the same.

The greatest caution is very properly required of those who propel engines having such vast power of mischief, and while it is the established law that a party whose negligence contributed to the injury cannot recover, this rule, which does not allow the jury to weigh the comparative negligence of the litigating parties, should not be extended so far as to take from the jury the right to determine (except in a very clear and certain case,) whether such negligence has in fact been committed.

The facts presented in this case seem to me of such a character as to require their submission to a jury, upon the demand of either party. Assuming that the deceased is to be held to the same degree of care which is demanded of an adult person, the girl was rightfully on the street; she had a right to cross the railroad track; she was obliged to do so, if her business led her north. A train was just passing to the south with rapidity, the bell ringing and the whistle sounding. It naturally and reasonably attracted her attention. It was possible, though not probable, that nearly at the same moment another train should

pass in the opposite direction. It was not proper, but negligent, on the part of defendants to allow it so to pass without signalizing its approach; it was reasonable to expect that such warning and notice would be given. If it was not given, I think it was reasonable and prudent to conclude that no other train was approaching, and consequently that there would be no danger in crossing the track. It may be true that extraordinary caution would have demanded that the girl should have looked to the south, as well as to the north and west. I cannot say that it was such negligence not to do so as should defeat the action, if the backing train was proceeding so noiselessly as not naturally to have excited the attention of a prudent person.

I am therefore of opinion that a new trial should be granted, unless there are some adjudications which settle the rule in a contrary direction.

I do not discover, in any of the cases to which reference has been made, any adjudication which forbids the granting of a new trial in this case. The cases unquestionably hold that a non-suit may be granted in cases of this character as in other cases, where the proof is insufficient to maintain the cause of action; that clear proof of negligence on the part of the plaintiff entitles the defendant to demand a non-suit; that where the facts are undisputed, and the inference to be drawn from them clear, and leading only to a single result, the question becomes one of law for a court to determine; that where there is full opportunity for observation, and abundant means for avoiding a collision, such as would occur to and be embraced, by a person of ordinary prudence, the plaintiff is negligent for not embracing them, and that the plaintiff is not relieved from the imputation of negligence unless it is deprived of that character by the defendants' own act or default.

Nevertheless, there are cases so nearly balanced, both as to the facts, and as to the inferences to be derived from

them, that a court cannot safely against the objection of a party, remove them from the consideration of the triers of questions of fact, and when such a course is taken against the will of a party, it can only be sustained upon the ground that there is no aspect of the case in which it can be considered which would justify a verdict for the plaintiff.

I do not regard this case as of that character, and am therefore of opinion that the non-suit should be set aside and a new trial should be granted, with costs to abide the event.

PECKHAM, Justice.    This suit was brought to recover damages alleged to have been caused by the negligence of the defendants, in running their car over deceased and causing her death.    The cause was tried at the Rensselaer circuit in 1857.

The deceased, a girl about twelve years of age, was walking in the city of Troy, on the east side of Fourth street, northerly, about mid-day. The track of defendants runs diagonally across Fourth street, in a direction east of north, but not fully north-east. The injury occurred by a train moving slowly backwards, northerly, on the easterly track, and crushing the girl just as she was stepping on the track to pass up the street. Just before the injury, a passenger train had passed on the west track rapidly down, southerly, meeting and passing the backing train at about the middle of Fourth street.

This passenger train made a good deal of noise, its bell was ringing, &c. No bell was rung or signal made on the backing train. Its motion was only about as fast as a man would usually walk. A man was on the north end of the backing train, but whether in the employ of the company or not does not appear. His face was towards the west at the time of the accident. These are the main features in the case, though, as several witnesses testify to the accident, there is some slight difference in their evidence.

At the close of the evidence, the defendants' counsel moved for a non-suit upon the ground that the evidence showed that the deceased was guilty of negligence which contributed to her death. As to that, the plaintiff's counsel asked to go to the jury, as a question of fact. The court refused to allow the cause to go to the jury, and non-suited the plaintiff. The negligence of the defendants was not denied or disputed.

But one ground was presented for a non-suit, and it is not, therefore, material to consider any other. The sole point here is, did the evidence so clearly prove the deceased guilty of negligence contributing to her injury, that, as matter of mere law, the court should so decide; or was the case on that subject of such a character, as to require its submission to a jury.

The doctrine is laid down in general terms that, to sustain this action, it must appear that the negligence of the defendants alone caused the injury. If the negligence of the deceased contributed, the action cannot be maintained.

What is meant by negligence of the party injured contributing to the injury, in such a case ? There are different degrees of negligence or care known to the law. In speaking of the various degrees of care or diligence, Sir William Jones says: "There are infinite shades, from the slightest momentary thought or glance of attention to the most vigilant anxiety and solicitude."

Again, he says: "The care, which every man of common prudence takes of *his own* concerns, is a proper measure to be required, in performing every contract, if there were not strong reasons for *exacting* in some of them a *greater*, and *permitting* in others a *less* degree of attention. If the construction be *favorable* a degree of care less than the standard will be sufficient; if *rigorous, a degree more will be required.*" (*Jones on Bailm.*, 5, 6 ; *Ang. on Law of Carriers*, § 6.)

The civil and common law make three degrees of negligence.

1. Gross; which consists, according to Sir Wm. Jones, in the omission of that care which even inattentive and thoughtless men never fail to take of their own property. This is regarded as equal to fraud or bad faith.

2. Ordinary neglect, the want of that diligence which the generality of mankind use in their own concerns, that is, of ordinary care.

3. Slight neglect, the omission of that care which very attentive and vigilant persons take of their own goods, or of very exact diligence. (*Jones on Bailm.*, 21, 22; *Ang. on Carr.*, §§ 5, 10.)

If the party injured be bound to exercise the greatest care, then no case can be found where an action could be maintained. I think the past has furnished no exception to this position, not even when the railroad is on the same surface with a public road, and occupying a part of it, either for the purpose of crossing or otherwise. If he had looked the other way, or thoroughly in all directions; had gone a little faster or a little slower; if he had stopped and made inquiry as to when the cars were coming to cross the track, he had not been killed. To require the strictest care from them would afford no practical protection to the public, and would, of course, give encouragement and impunity to negligence by the railroads.

While it is important to foster commerce and facilitate intercommunication, there is no reason why either should be done at the expense of human life. I am not aware that it has ever been adjudged by any court, that extreme diligence, or, in the language of Sir William Jones, " very exact diligence " can be required of persons passing on or over a public street or thoroughfare, though a railroad may cross it on the same surface. As the law does not then exact extreme care, it does not deprive the party injured of redress, though he was guilty of slight neglect, which

McGrath agt. The Hudson River Railroad Co.

is the absence of extreme care, and though that slight neglect contributed to the injury.

It is a sound rule, as to diligence, that the party must proportion his care to the injury likely to accrue to others by any improvidence on his part. " Where the consequences of negligence will probably be serious injury to others, and where the means of avoiding it are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight." (*Per* Johnson, J., *Kelsey* agt. *Barney*, 2 *Kern.*, 429–30.)

This is a sound rule,—healthful in its practical application. People in this country in passing over public roads or streets crossed by railroads, will bestow about so much attention. They desire to save their limbs and lives, and a book filled with statutes of pains and penalties, or disabilities, will not add a particle to their care or precaution.

If the loss of life will not secure caution, forfeiture of property or imprisonment, for having their limbs broken, will be wholly ineffectual. The only way to protect them is to exact great diligence from those who manage and control these powerful and terrible steam engines on railroads. They are capable of avoiding and preventing injuries to persons in such cases, and it is their business, their special business, to do so.

In no country but this are railroads allowed, as a general thing, to cross streets or public highways, with cars propelled by steam, upon the same surface with the street or highway. In every excepted case the crossing place is guarded with a vigilance never exhibited here.

If the railroads here choose to cross streets, upon the same surface, they assume a corresponding responsibility, and must exert a corresponding vigilance. It being the peculiar business of the managers of these steam engines, in view of these increased perils to persons lawfully traveling the streets or highways, to be extremely careful not to

injure them, they will not be allowed to neglect their business, they must not be inattentive or absent-minded.

Human beings, especially in this country, intent upon and absorbed with their business, their cares, their griefs, or their pleasures, are not always mindful of the perils of these crossings. They are absent-minded sometimes on such occasions, and they cannot be made otherwise; the mind is legitimately engaged on something else. The law then looks to them with more toleration, and " permits in them a less degree of attention." In the language of Sir William Jones, before referred to, " the construction of their conduct is favorable, and a degree of care from them less than the standard will be sufficient." They imperil nothing but their lives; if they run against a steam engine there is little danger of their injuring it.

The great number of lives sacrificed at these crossings should warn courts to be careful, before adjudging, as matter of law, that their negligence was such as justly to forfeit their lives. The care exerted was such as they thought sufficient, such as they trusted their lives upon; and this gave the highest evidence of their sincerity.

In some states in this country, where railroads cross each other, statutes have been passed requiring each train to make a full stop, as it comes to such crossing, before passing over. That, in the judgment of such legislature, is the measure of care which such a case demands.

In my judgment, our courts have gone quite far enough in the direction of holding persons injured to be free from negligence before they can recover. Both principle and sound public policy forbid any extension of the doctrine. It would certainly encourage and promote negligence on the part of the railroad employees; feeling that any want of care by the injured would secure impunity to them, and knowing that no man was ever yet injured at a crossing to whom some want of care could not be imputed, they would naturally and necessarily relax from that keen vigilance

required from persons in their position. Its extension would secure no greater caution on the part of the public.

I have examined the testimony in this case with some care, and am clearly of opinion it was not a case for a non-suit, on the question of the negligence of the deceased. A train had just passed down with speed and much noise, and in a manner well calculated to attract the attention of deceased; and she would then quite naturally think the track was clear, and not be looking for another train immediately. She was no trespasser; was walking where she had a legal right to go, in a public street; and this train, stealthily, without ringing a bell or giving any notice, approached her under circumstances well calculated to avoid her observation. Her course was northerly, and the train east of north—though not north-east—almost at her back. In my judgment this was a proper case for a jury. Questions of fraud and negligence are peculiarly for them, under proper instructions from the court. Such cases have been so regarded by elementary writers.

"All the preceding rules may be diversified to infinity by the circumstances of every particular case, on which circumstances it is, on the continent, the province of a judge appointed by the sovereign, and in England of a jury, to decide." (*Jones on Bailm.*, 122.) Repeated with approbation in *Ang. on Carriers*, § 16.

STORY, Justice, says: "What is common or ordinary diligence is more a matter of fact than of law. And in every community it must be judged of by the actual state of society, the habits of business, the general usages of life, and the dangers as well as the institutions peculiar to the age." (*Story on Bailm.*, § 11.)

Judge JOHNSON says, in the court of appeals, on this subject: "It by no means follows, because there is no conflict in the testimony, that the court is to decide the issue, as a question of law. The fact of negligence is very seldom established by such direct and positive evidence that

it can be taken from the jury and pronounced upon as matter of law." (*Ireland* agt. *Plankroad Company*, 3 *Kern.*, 533.)

In Connecticut, it is held that negligence is so peculiarly a question of fact, that it should be left to the jury, even on a conceded state of facts. (19 *Conn. R.*, 566; *Been* agt. *The Housatonic R. R. Co. Id.; Smith and Bates' Am. Railroad cases*, 114. See also *Oldfield* agt. *The N. Y. and Harlem R. R. Co.*, 14 *N. Y. R.*, 310, a case, in many respects, similar to this. *Hegan* agt. *Eighth Ave. R. R. Co.*, 15 *N. Y. R.*, 380; *opinion of* PAIGE, J.; *and see Carlton* agt. *Bath*, 2 *Foster*, 559; *Whitney* agt. *Lee*, 8 *Met.*, 93.)

It was insisted at the bar that the defendants were guilty, in this case, of gross negligence, and therefore that the plaintiff was entitled to recover, though the deceased was guilty of ordinary negligence. As the facts were presented at the circuit, without hearing defendants' evidence, there is, perhaps, some ground to claim that there was evidence of gross negligence in the defendants' agents. I do not propose to examine this point at length. In such a case there are many *dicta* and some authorities favoring the position of plaintiff's counsel. (*Rathbun* agt. *Payne*, 19 *Wend.*, 401; *Hartfield* agt. *Roper*, 21 *Wend*, 615, 19; *Trow* agt. *The Vermont Cent. R. R. Co.*, 24 *Vermont R.*, 487; *Kembacker* agt. *The Cleveland, Columbus and Cinn. R. R. Co.*, 3 *Ohio R.*, 172.)

SELDEN, J., says: "What is gross negligence depends upon the particular circumstances of each case." (*Nolton* agt. *The West. R. R. Co.*, 15 *N. Y. R.*, 449.)

In ordinary cases, negligence, even when gross, is but an omission of duty. It is held, contrary to the text of Sir William Jones, that it is not designed or intentional mischief, though it may be cogent evidence of it. (*Story on Bailm.*, §§ 19, 22; *Gardner* agt. *Heath*, 3 *Den.* 236.)

But, in cases where human life is put in jeopardy, any negligence has been held to be gross. Per CURTIS, J., in

delivering the opinion of the court : " When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they should be held to the greatest possible care and diligence. And whether the consideration be pecuniary or otherwise, the personal safety of passengers should not be left to the sport of chance, or the negligence of servants. Any negligence, in such cases may well deserve the epithet of gross." (16 *How. U. S. R.*, 469, 474: *and see cases there cited of gross negligence; also cases referred to by* SELDEN, J., *in* 15 *N. Y. R.*, 449.)

Is not human life just as sacred outside as inside the cars, and entitled to the same care, when lawfully crossing a public road? (*See also Bird* agt. *Holbrook,* 4 *Bingham,* 628; *Jordon* agt. *Crump,* 8 *M. & W.,* 782,) which hold that a party doing an act on his own land which may endanger human life, though not illegal, as the setting of spring guns, may be responsible for injuries thus sustained, even to a voluntary trespasser. But it is enough, in this case, without passing upon these questions, to say that the learned judge erred in non-suiting the plaintiff. The question of negligence of the deceased, under the evidence, was for the jury; and, for this cause, there must be a new trial, with costs to abide the event.

(Titles of the three preceding causes.)

GOULD, Justice, *dissenting.* The point in these three cases is a single one, substantially the same in all.

In the third case, the deceased, a child of 12 years of age, was walking near where a railroad crossed the street, and at a place where for over three hundred feet of the sidewalk along which she was going she had been in full sight of a train backing up as slowly as she was walking. For a few seconds, during this time, a down train passed on the parallel track, (further from her than the track on which the up-train was backing up,) passed very rapidly,

and was entirely away from the place of the injury before the injury happened. The deceased, in broad daylight, and with the backing train directly before her and in plain sight, *stepped on the railroad track directly in front of the car, just as it reached the crossing,* and she was run over and killed; a single truck passing over her.

In the second case, a man, muffled around his neck and ears, seated in the bottom of his sleigh, knowing all about the railroad crossing at that place, without paying *any attention* to the fact whether or not a train was coming, *drove his horses towards the track, so that the locomotive and the horses came together, without the horses having been at all on the track,* (for an engineer to see,) and the team was whirled around sidewise; the man was thrown out and so injured that he died. About one-third of a mile of the railroad was in plain sight, (*if he chose to look,*) for the whole distance after he left the tavern shed, except some fifteen feet of the way. If he did *not see* the road and the coming train, it was because *he did not look;* if he *did see it, he took the risk of driving on the track in front of it.* In *either* event, *he was, beyond all doubt, careless, and contributed by his carelessness* to the injury.

In the first case, the deceased was standing in the day time close by a railroad track, along which a train was moving *very slowly;* as the train came up towards him, he, *without looking to see if a train were coming, steps forward close to the cow-catcher,*—so close that it hits him and throws him down,—and *one wheel* passes over his leg. A single glance along the track, before stepping so near it, would have sufficed to *see* the train, and *keep from under* the cow-catcher. *Failing to take the last step,* he was *safe;* but he *stepped into* the danger.

Now, in each case, carelessness,—a carelessness so decided and plain that there can be no mistake in so calling it; and a carelessness which not only *contributed* to, but was the *sole cause* of, the injury,—was *plainly proved*

McGrath agt. The Hudson River Railroad Co.

by the plaintiff's witnesses. And where that is proved, there *cannot* be a recovery.

That, in any given case, the *facts* being proved, whether *those facts constitute carelessness* is a question of *law, for the court*, is too well settled to admit of debate. And that, where the facts were clearly proved, a verdict for the plaintiff would be *set aside as against evidence*, is as little debateable.

In a case against the Albany pier company, for not keeping (as by statute required,) a timber along the edge of the dock, several inches above the dock's level; whereby it was alleged a team was backed off into the water and lost, it being proved that the teamster *knew* the state of the dock, and yet backed down to the edge with a load so heavy that his team could not control it, this district general term held the plaintiff could not recover—*because* the teamster was, as matter of *law on those facts*, careless.

In *Hyatt* agt. *Grant*, (this district,) a passenger on board of a steamboat was killed by a vessel which came into collision with the steamboat. It was proved that the steamboat *could* have avoided the collision; and its not doing so, was held *careless*, as matter of *law*, and the plaintiff was *non-suited*. On review, at general term, we held the *principle* of the non-suit clearly right, and that it was *not* necessary to submit that question *to the jury;* though we sent back the case, on the ground that the *deceased* was not careless, or accountable for the carelessness of the steamboat. And we have given other (unreported) decisions, to precisely the same purport.

Neither these decisions, nor any authoritative decisions in the state, leave this point open to the introduction of the question of *comparative* negligence, as between the two parties; and they concede carelessness on the part of the defendant. But no repetition of *all the circumstances of particular reported cases,*—so long as they do *not meet* this

rule,—can produce anything but confusion as to the deci-
sion of the cases before us.

Unless the majority of the court are prepared to say
that, in either of these cases, the deceased was *not proved
to have been at all careless,* (in a way that contributed to
the injury,) it is useless to give details to show that he, or
she, *was not so very careless as he might have been;* or that
the railroad company might have been much more careful
than it was; or that a locomotive is *a dangerous thing to
run against.* It *is* dangerous, and *known* to be so; and
persons should take care not to run against it.

As I understand the opinions, they contain rather *plau-
sible excuses* for the negligence of the deceased persons,
than any *real denial* of its *proved existence.* And they fur-
nish no ground whatever for reversing the decisions
already given. I am unable to yield my own strong con-
victions (as to the true rule of the law,) to the high regard
I have for my brethren and their opinions; and I feel con-
strained to dissent from them in each of the three cases.*

---

\* Since these cases have been decided, the case of *Johnson* agt. *The Hudson
River Railroad Co.,* (20 *N. Y. R.,* 65,) has been published. That case involves
the question of the *onus probandi* of negligence by the respective parties. In the
opinion of the court, DENIO, J., says: "The true rule in my opinion is this: The
jury must eventually be satisfied that the plaintiff did not by any negligence of his
own contribute to the injury. The evidence to establish this may consist in that
offered to show the nature or cause of the accident, or in any other competent proof.
To carry a case to the jury, the evidence on the part of the plaintiff must be such
as, if believed, would authorize them to find that the injury was occasioned *solely
by the negligence of the defendant.* It is not absolutely essential that the plain-
tiff should give any affirmative proof touching his own conduct on the occasion of
the accident. The character of the defendants' delinquency may be such as to
prove, *prima facie,* the whole issue, or the case may be such as to make it neces-
sary for the plaintiff to show by independent evidence that he did not bring the
misfortune upon himself. No more certain rule can be laid down."

The rule here laid down seems to establish very conclusively that where the proof
shows that the plaintiff did "by *any negligence of his own,* contribute to the
injury," the court must *non-suit* him—because the evidence is not such as "would
authorize the jury to find that the injury was occasioned *solely* by the negligence of
the defendant."—REP.