Keller agt. New York Central Railroad Company.

---

# COURT OF APPEALS.

BENJAMIN KELLER, adm'r of RACHEL KELLER, his mother, agt. THE NEW YORK CENTRAL RAILROAD COMPANY.

No proof of *pecuniary* or *special damage* to the plaintiff or next of kin is necessary to sustain an action brought under the statute by the administrator of the deceased for injuries to the person. (*See to the same effect Oldfield* agt. *N. Y. Central R. R. Co.*, 14 *N. Y. R.*, 310.)

The question of *negligence* in all cases involves a question of *fact*, and it is only where the question of fact is *free from all doubt* that the court has a right to apply the law without the action of the jury; that is, the facts may be so clear and decided that the inference of negligence is irresistible; and in every such

case it is the duty of the court to decide; but when the facts or the inference to be drawn from them are *in any degree doubtful,* the only proper rule is to submit the whole matter to the jury under proper instructions.

The *negligence* of the party, which will *defeat his action* in these cases, is nothing more than a *want of proper care;* and this question is always more or less affected by the conduct of the *opposing party.*

It is not always negligence to cross a railroad track. If the crossing is at a time when no train is due, and cannot be reasonably expected to pass, it is *not negligence.* It is not negligence when a person uses his faculties the best he is capable of under the circumstances.

In this case, the deceased mother and daughter, passengers on a mail train of the defendants' cars going west, left the cars at a station where they desired to stop, while the cars were on a slow move forward, getting off on the south side where there was another railroad track, over seven feet distant; they attempted to cross the latter track when an express train going east, at the rate of thirty or forty miles an hour, struck and killed them instantly. The two trains should have passed each other two and a half miles west of the station—the mail train being behind time,

*Held,* that the inference to be drawn from a pretty broad field of facts and circumstances, which legitimately belonged to the jury, rendered it a fit case to be submitted to the jury, and the defendants' motion for a *non-suit* was properly *denied.**

September Term, 1861.

THIS action was brought by Benjamin Keller, administrator of Rachel Keller, to recover damages for injuries to her, and for killing her, by defendants, at Canastota, in the county of Madison, on the 29th day of August, 1854, under and in pursuance of the act of 1847, entitled "An act requiring compensation for causing death by wrongful act, neglect or default," as amended by chapter 256 of the Laws of 1849.

---

* If the case of *Ernst* agt. *Hudson R. R. R. Co.,* (*ante, p.* 97,) is to be followed, it would seem that the deceased in this case, both mother and daughter, were guilty of gross negligence in *omitting to look both ways upon the track* they were about to cross, to ascertain whether a train was approaching in either direction. If they had looked they would have seen it, and under the common instincts of humanity for the preservation of life, would have remained on the cars and been saved; or as in the case of *Wilds,* (23 *How. P. R.,* 492,) would have decided that they could cross uninjured and take the consequences. The presumption is, under this rule, that if they did look, they decided on the latter course; and what better or safer rule can be laid down in these cases than the one stated in *Ernst* agt. *Hudson R. R. R. Co.;* and that there is a necessity for some rule or settled direction on the subject is apparent, on looking over the many reported cases on this subject, most of which are injuries and death caused by undertaking to cross a railroad. As the latter case is the latest from this court, it ought to be considered binding.                                                                              REP.

The action was tried at the Madison circuit, in March, 1857, when the plaintiff obtained a verdict against the defendants for $1,700 damages.

The deceased was a widow, and left no child, surviving her, under the age of twenty-one years, or relative who was dependent upon her for support. Her heirs and next of kin were two sons and a daughter, all of whom were over twenty-one years of age. Another adult daughter was killed at the same time and in the same manner Mrs. Keller was.

Mrs. Keller and her daughter (Mrs. Dickens) arrived at Canastota, in the mail train from the east, which train was a few minutes behind time when it was stopped. That train was on the north track, which was about seven feet from the north rail of the south track, i. e. the south rail of the north track was about seven feet from the north rail of the south track. Mrs. Keller and Mrs. Dickens got off the mail train, on the south side, just previous to the passing of an express train at full speed, on the south track, from the west, and before they got across the south track that train struck them and killed both of them instantly.

The supreme court, at the general term, denied the defendants' motion for a new trial. (See 17 How. Pr. R., 102 ; 28 Barb., 44.)

The defendants appealed to the court of appeals, where the decision of the supreme court was affirmed.

The facts not stated above, which are necessary to a correct understanding of the points decided by the court of appeals, are contained in the opinion of that court, delivered by Judge MASON.

T. JENKINS, *for plaintiff.*
S. T. FAIRCHILD, *for defendants.*

MASON, J. The first question which I propose to

consider in this case is, whether the judge at circuit was right in his refusal to grant the defendants' motion for a non-suit.

The grounds taken by the counsel on that motion, or that the complaint be dismissed, are : 1, because no damages were proved as contemplated by the statute, neither to the husband, nor to the next of kin, nor are any alleged in the complaint ; 2, because no negligence or wrongful act on the part of the defendants is proved, but the contrary ; 3, because the undisputed evidence in the case shows positive carelessness on the part of the deceased, which contributed to the accident. The case of *Oldfield, administrator of Downie* agt. *the New York & Harlem Railroad Company*, (14 *N. Y. R.*, 310,) and the complaint in the action furnishes a complete answer to the first objection. That case decides that no proof of resulting damages in such an action is necessary to sustain it, and it is alleged in the complaint that the next of kin of Rachel, the intestate, suffered great loss and damage by means of her death. There clearly was sufficient evidence upon the question of the defendants' negligence to submit the case to the jury. In the first place, it was negligence in the engineer of the express train to run his train past the station at the rate of thirty to forty miles an hour, when he knew the mail train was at the station discharging its passengers. In the second place, it was negligence in the conductor of the mail train to make so short a stop at the station. He should have given more time, and seen to it that his passengers were safely discharged. At least he should have given them reasonable time. In the third place, the station should have been announced in the car where the deceased was. I know there is a conflict in the evidence whether the station was announced in this car or not ; that certainly belonged to the jury to decide, and we must assume it was found in favor of the plaintiff. In the fourth place, the defendants' servants,

having in charge the mail train, knew that the express train was approaching at a rapid speed, and that there was great danger to be apprehended of injury to those who were to get off from their train, and they should have taken more precaution. The brakemen stationed to keep persons from getting off the south side were negligent in their duties, either in allowing these ladies to get off on that side or for leaving their posts before the apprehended danger was past. It seems this danger was apprehended and would have been guarded against if the brakemen had not been negligent in discharging their duty. The brakeman between the first and second car says, he knew the express train was coming and kept his station on the south side of the platform to prevent people getting off on that side. The deceased and her mother got off that platform on the south side, and yet this brakeman says he first saw them on the south track. He must have been asleep or else not attending to his duties.

The question of negligence in all cases involves a question of fact, and it is only where the question of fact is free from all doubt that the court has a right to apply the law without the action of the jury. (*Banker* agt. *Rens. & Sar. Railroad Co.*, 32 *Barb. R.*, 165–169.) When either the facts or the inference to be drawn from them are in any degree doubtful as to the question of negligence, it is the duty of the judge to submit the matter to the jury under proper instructions as to the law. (32 *Barb. R.*, 144.) The rule upon this subject was well stated by Judge Johnson, speaking for this court in the case of *Ireland* agt. *Plank Road Company*, (3 *Ker. R.*, 533,) where he said it by no means follows because there is no conflict in the testimony that the court is to decide the issue as a question of law. He adds, the fact of negligence is very seldom established by such direct and positive evidence, that it can be taken from the jury and pronounced upon as matter of law. On the contrary, it is almost

always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced and their weight and force considered. In such cases the inference cannot be made without the intervention of the jury, although all the witnesses agree in their statements. Deductions from facts and circumstances, from their very nature, are not strictly subjects of legal science, like presumptions of law. What constitutes negligence in such cases is determined by an inference of the mind from the facts and circumstances of the case, and as minds are differently constituted, the inference from a given state of facts and circumstances will not always be the same. I admit the facts may be so clear and decided that this inference of negligence is irresistible, and in every such case it is the duty of the judge to decide; but when the facts or the inference to be drawn from them are *in any degree doubtful*, the only proper rule is to submit the whole matter to the jury under proper instructions. The case at bar is one which the judge at circuit was clearly in the line of his duty in submitting the case to the jury upon the question of the defendants' negligence. There were so many facts and circumstances and such a variety of considerations to be taken into account in determining the question, the facts in regard to some of which being also in dispute, that the judge was right in leaving the inference or conclusion to be deduced from them to the jury; the facts were not so clear and decided that the inference was irresistible. My own opinion upon the trial was, that a case of negligence was proved, and if the duty had devolved upon me to decide, I should have so found. It is hardly a ground for interference with this judgment that another judge sitting in this court in review, comes to a different conclusion upon this question. The question to be determined in such a case is solved by the inference which the mind draws from

the facts and circumstances of the case, and as minds are differently constituted, the inference from a given state of facts and circumstances will not always be the same. Here, then, you get a case which it is the province of the jury to decide. It would have been an error in the judge at circuit if he had refused to submit this case to the jury upon this question of negligence.

The remarks above made as to the submission of the question of the defendants' negligence, apply equally to the question of the negligence of the deceased. The negligence of the party which will defeat his action in such cases is nothing more than want of proper care, and this question is always more or less affected by the conduct of the opposing party. It is not always negligence to cross a railroad track. If the crossing is at a time when no train is due and cannot be reasonably expected to pass, it is not negligence. The passengers in this mail train had no reason to apprehend or expect that the express train would pass them at that station. Their time table required them to pass each other two and one-half miles west of Canastota, and such was their almost invariable custom. Mr. Toby, who kept the railroad house, there says that the trains do not usually meet there, and he did not know as they had that season. It was a thing unusual, and seemed to have alarmed the conductor of the mail train; and Rose, the ticket and freight agent, seemed alarmed that the express train was to pass while the mail train was receiving and discharging its passengers. The flagman, Weldon, says he was so flustrated and confused he could not tell how long the mail train did stop. It was an occurrence that semed to have alarmed Mr. Toby, who was familiar with all the dangers to be apprehended, and he was on the alert. Rose, the ticket agent, gave special instruction to the flagman. He sent Reese, the baggageman, around the south side of the mail train to see that no one got on the south track.

These two brakemen, R—— and Waterbury, saw the express train coming, and seemed fully to appreciate the danger. They voluntarily, without any directions, placed themselves on the south side of the platform of their cars to prevent persons getting off on that side, and Waterbury says he showed persons off the north side until he saw Miss White, who had got off on the north side, was passing around behind the cars to cross the track, and seeing her danger he started for her; but fortunately Mr. Toby saw her, and running after her caught hold of her, and drew her back when within three feet of the south track, and at that instant, says Mr. Toby, the express train came. The sequel demonstrated that these persons were not unnecessarily agitated in regard to the apprehended danger from the express train. If the deceased and her daughter knew that the express train was coming, it would have been a mere piece of recklessness in them to have got off on the south side. They did not know it, and therefore had no reason to apprehend it, and certainly the deceased was no more negligent in getting off the train on this side than on the other side, had not the express train been running in. The ground was smooth and hard where they got off, and there was a space between the north and south track of over seven feet in width, and where the passengers land who get off the down trains from the south track. It may have been, and I am inclined to think it was negligence in these ladies to get off while the train was in motion; and I think that we should hold that they assumed the risk of safely landing themselves from the cars. They did safely discharge themselves from the cars, and would have been all safe but for the unexpected approach of the express train. It was certainly not unlawful for them to get off the south side, and they were not negligent in doing so unless they had reason to expect a train to pass on the south track. Whether they were negligent or not depends upon the

question whether they had reason to apprehend danger.
Now it seems to me if she had been familiar with the local-
ity and known the ground, and been familiar with it, they
were not negligent in getting out on the south side; but
these ladies were strangers there, and for aught that
appears, were not aware that there was another track south
of the one they were on. Was Miss White, the music
teacher, negligent in attempting to cross this track at the
time and in the manner she did? She had been accus-
tomed to come upon this train, and cross the railroad to go
to her music class, and knew that she had no reason to
expect any train from the west at that time. She was not
careless, because she had no warning of danger, and yet
she would, beyond doubt, have been killed if Mr. Toby had
not seized her and pulled her back just at the instant he
did. And so young Fowler, who got off on the south side,
would very likely have been killed if Mr. Toby and the
flagman had not warned him of his danger in time to make
his escape. Were they negligent in attempting to cross the
track after they were safely landed? This depends upon
many circumstances. They certainly were in great danger
to remain where they were. The engineer of the express
train swore that it would be difficult to stand where they
got off, between the trains, when one was in full motion,
although he thought it barely possible. Now, it does not
appear from the evidence when they first learned the
approach of the express train, whether before or after they
had started to cross the track; if after, then it were safer to
keep on. It does not make much difference, I apprehend,
whether it was before or afterward. If they saw it as soon
as they got upon the ground, they can hardly be charged
with negligence in their best attempts to escape danger.
Here was the express train coming towards them at the
rate of thirty to forty miles an hour. Here was in their
reach the train from which they had just alighted, and
there was no escape that way unless they got back upon

that train which had been increasing its speed. This could not have been done probably if they had tried. There certainly could have been no question in regard to their negligence had they been killed in attempting to get back upon the train from which they had just alighted. Had they stood still they would very probably have been killed. If they saw the whole of their danger after they landed, I am not prepared to say that the course they took was not the wisest. Had the mother but time to have taken one step more, and the daughter two, they both, probably would have been saved. But they had no time to reason and were undoubtedly greatly frightened, and if they did not exhibit sound judgment, or what we may think such, now in coolly looking the matter over, it is not such negligence as will deprive them of this action. It is not negligence when a person uses his faculties the best he is capable of under the circumstances. They were not negligent in remaining in the car so long as they did, unless the station was announced, and there is a conflict in the evidence in regard to this question which belonged to the jury to determine. There is also considerable discrepancy in the testimony as to the speed with which the train was moving when they got off, and Gen. Messanger says they had started with a slow motion, and others say they were at the speed of from five to eight miles an hour, and then again as to the time of the stop, the evidence varies from thirty seconds to two minutes. From all these facts and circumstances to which I have adverted, and many others which are to be found in the case, the deduction of negligence or not is to be ascertained. It is an inference to be drawn from a pretty broad field of facts and circumstances, and which legitimately belonged to the jury. It was a fit case to submit to the jury. It was so submitted, and they have found, from their verdict, that the deceased was not negligent. The supreme court, who had the right and were asked to set aside this finding of the jury, by their refusal,

have approved it.　If there was nothing to submit, I think it will demonstrate that both the jury and an intelligent court, which reviewed their finding, committed a pretty gross blunder; the one in rendering a verdict, and the other in sustaining it.　This court has no power either to approve or disapprove of the verdict; all this court can determine is, whether as matters of law there is any aspect in which the case can be considered which would justify a verdict for the plaintiff; but the rule is, that if this rests in any degree of doubt, then the case must go to the jury for their verdict.　They hold in Connecticut that negligence is so peculiarly a question of fact, that it shall be left to the jury, even on a conceded state of facts.　(19 *Conn. R.,* 566; 2 *Smith & Bates Am. Railway cases,* 114.)　There was no error committed in leaving this question of negligence to the jury.　The general proposition was submitted on the motion for a non-suit that the evidence was not sufficient to entitle the plaintiff to recover, but it involved only the three propositions we have considered.

The point was also taken that the complaint did not state a cause of action; but the point is not made on this appeal, and there is nothing in the proposition, and it is not necessary to consider it.　The first two propositions of the defendants' counsel, in his request to charge, are settled by this court against the defendants in the case of *Oldfield* agt. *The New York & Harlem Railroad Company,* (14 *N. Y. R.,* 310.)　That case holds that no proof of pecuniary or special damage to the plaintiff or next of kin, in consequence of the death, was necessary to sustain the action.　That case also holds that the existence of a widow to share in the damages, is not necessary to sustain the action; that the action lies in every case where the deceased could have sustained an action for the injury had she survived.　The case of *Quin, adm'r* agt. *Moore,* (15 *N. Y. R.,* 432,) also affirms the latter proposition.

The third and fourth propositions in the defendants'

requests, to charge, involve simply the questions of negligence on the part of the deceased and the defendants, which we have already considered. The fifth proposition was charged as requested. The case of *Oldfield* agt. *The N. Y. & Harlem R. R. Co.*, (14 *N. Y. R.*, 310,) holds that it would have been an error for the judge to charge the latter branch of the sixth proposition, and it is not important, therefore, to inquire whether the first portion of the proposition is right or not; a request to charge the jury should be in such form that the court may charge in the very terms of the request, without qualification. (*Carpenter* agt. *Stilwell*, 1 *Kern. R.*, 61.) The judge is not required to separate a proposition of this kind and pick out what is good and refuse the rest. There was no error, therefore, in the refusal to charge the sixth proposition; but there is another answer to all of these propositions. They were submitted as a series of propositions for the judge to charge, and there is but a general exception which states that the defendants excepted to the judge's refusal to rule and decide as requested in the foregoing propositions. Now as several of the propositions are clearly erroneous, this general exception presents no question for review in this court. (*Caldwell* agt. *Murphy*, 1 *Ker. R.*, 416; *Jones* agt. *Osgood*, 2 *Seld. R.*, 233; *Hunt* agt. *Maybee*, 3 *Seld. R.*, 266–273.)

There are several answers to the defendants' objections, that the complaint did not state the names of the next of kin, &c. In the first place, it is not necessary to state them, and in the second place, the objection cannot be taken on a motion for a non-suit. If the defendant had desired to have the complaint more specific in this respect, his proper way was to move to have the complaint made more specific. And in the third place, as this objection was taken on the motion for a non-suit, it could not prevail, for this court has held in the two cases of *Quin* agt. *Moore*, and *Oldfield* agt. *The New York & Harlem Railroad Company*, above referred to, that the action depends on the right of the

injured person to maintain an action for the injuries if he or she were living; and that the action lies in every case where the deceased could have maintained an action, were he or she living. This certainly settles the question that who are the next of kin is not material so far as the right to maintain the action is concerned.

The objection taken to the evidence of Davis and War-decker cannot avail the defendant. The objection is a general one to the whole evidence. (*See case, folios* 36, 40, 124.) The most of this evidence was certainly wholly unobjectionable, and consequently the objection goes for nothing, If the counsel had called the attention of the judge to a particular portion of this evidence, by objecting to that specifically, very probably he would have excluded it. It is enough, however, that having objected to this entire evidence in gross, his objection cannot prevail for that reason.

The defendants' counsel proposed to ask the witness Rose, whether this train stopped ample time for all the passengers to get off, including these ladies. This was objected to, and excluded. This evidence was properly excluded. It presented one of the issues in the cause which the jury were to determine from all the evidence in the case, and the opinion of the witness was not competent evidence. It did not involve a matter of scientific opinion, or where the opinion of experts was competent. (*Cook* agt. *Brockway,* 21 *Barb. R.,* 331 ; *Morehouse* agt. *Mathews,* 2 *Comst.,* 514 ; *Merritt* agt. *Seaman,* 2 *Seld.,* 168 ; *The Jeff. Ins. Co.* agt. *Cathaal,* 7. *W.,* 72.) This witness had stated the time of the stop to be from one and one half to two minutes, while others had stated it to be thirty seconds to a minute ; and there were other facts in the case upon which the jury were called upon to decide this question of fact. It is sufficient, however, that the evidence was not competent, for the opinion of the witness was not evidence upon such a subject. It was not com-

Keller agt. New York Central Railroad Company.

petent for the defendant to prove by Cole and Woolever, although they were proved to have had experience in rail-roading, that in their judgment it was safer to run into the station, and discharge the passengers, than to stop either east or west of the station. It was a matter where the opinion of those men was not evidence. (21 *Barb.*, 331; 2 *Comst.*, 514; 2 *Seld.*, 168; 7 *W.*, 72.) The offer certainly went no further as a proposition, than to give the opinion of these men upon that subject, and was so treated and understood upon the trial. It was said by this court, in the case of *Daniels* agt. *Patterson*, (3 *Comst. R.*, 47–51,) that before a party excepts on account of the rejection of evidence, he must make his offer in such plain and unequivocal terms, as to leave no room for doubt about what was intended ; and if he fail to do so, and leave the offer fairly open to two constructions, he has no right to insist in a court of review upon the construction which is most favorable to himself, unless it appear that he was so understood by the court which rejected the evidence. The offer was treated and understood, upon the trial, as but an offer to have the opinion of these men given to the jury upon that subject, and this it seems to me is but a fair construction. There is not a single fact stated which is offered to be proved to show that it was safer to go into the station ; and besides, the offer of proof is based upon the distinct ground that these two witnesses were experienced men in railroading; Cole having been shown to be a conductor some eight years, and Woolever being an engineer upon the express train.

There is, however, another perfect answer to this offer of evidence, in any view which may be taken of the offer ; the evidence was incompetent, as not being within the issue. There is not a single allegation, in the complaint, that it would have been safer to have stopped the mail train either east or west of the station. Nor is there

any allegation that it was negligence for the conductor of that train to run into the station. Nor did the plaintiff adduce a single particle of evidence tending in the least to show that it was safer to stop short of, or go beyond, the station, nor was any such claim presented on the trial. The simple issue to be tried was, whether what was done afforded evidence of negligence, and not whether it would have been more negligent to have done something else. It is never error to confine the proof to the issue to be tried.

There are no other questions in the case, and where a trial and general verdict have been had, this court only deal with the questions of law, upon exceptions duly taken; we cannot consider whether the damages are excessive, or the verdict is against the weight of evidence, (4 *Kernan, R.,* 310.)

I advise the affirmance of the judgment. COMSTOCK, Ch. J. and LOTT, J., did not sit in the case. DENIO, HOYT, JAMES, and SELDEN, JJ., were for the affirmance of the judgment below; JAMES thinking that the negligence of the deceased was, if that question were examinable here, sufficient to bar the action, but that there was evidence on that subject enough to raise a question for the jury. DAVIES, J., expressed no opinion.