## N. E. LEGGETT v. WESTERN N. Y. ETC. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF WARREN COUNTY.

Argued May 7, 1891—Decided May 27, 1891.
[To be reported.]

(*a*) In an action for negligence, plaintiff's testimony was to the effect that she was a passenger on defendant's train, which reached her station after dark; that she started out of the car, with a number of packages, and when she reached the steps she became aware that the train was moving, having been negligently started before she had been given a reasonable opportunity to alight.

(*b*) The plaintiff herself testified that, at the instant of discovering that the train was moving, she went off the car, falling upon the ground and receiving injuries, without any conscious effort on her part to leave the car, and without having had time to think of doing so. There was testimony for the defendant which tended to show that she stepped or jumped off the train:

1. The court properly submitted to the jury the question whether the plaintiff stepped down or jumped from the moving car, with instructions that, if she did so, she could not recover, unless she had reason to apprehend greater danger from remaining on the train, or the suddenness of the danger confronting her rendered her incapable of exercising proper judgment.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 436 January Term 1891, Sup. Ct.; court below, No. 8½ June Term 1890, C. P.

To the first Monday in April, 1890, Neva E. Leggett brought trespass against the Western New York & Pennsylvania Railroad Company, to recover for personal injuries alleged to have been caused by the negligence of the defendant. The defendant's plea was not guilty.

At the trial on February 11, 1891, the following facts were shown:

On December 14, 1889, the plaintiff was a passenger upon a train of the defendant company. Her destination was Sugar Run station, which was reached by the train after dark, about six

o'clock P. M.  When the train stopped at the station, the brake-man who had announced the station and whose duty it was to assist passengers in the rear car to alight, started forward towards the engine.  Testimony for the plaintiff tended to show that it was but a few seconds from the time the cars stopped until they started again, while several of the train crew testified for the defendant that the stop was for the "usual time."  The conductor testified that he signaled the engineer to start, after hearing the brakeman call out, "All right here."

As soon as the train had come to a stop at the station, the plaintiff gathered up a number of packages, and started to the door of the car.  The testimony of one of the witnesses for the defendant tended to show that she turned back, before reaching the platform of the car, to get something she had forgotten, and that the train was moving before she reached the door.  Two other ladies, who preceded the plaintiff, got off safely.  The plaintiff testified that after she had reached one of the car steps she became aware that the cars had started, and almost instantly, without having time to think anything about stepping off the train while it was moving, she fell forward, and, alighting on the ground, received the injuries complained of.  The testimony of several witnesses for the defendant tended to show that she stepped or jumped off the car, after throwing her packages off.  The facts are more fully stated in the opinion of the Supreme Court, infra.

At the close of the testimony, the court, METZGER, P. J., 29th district, specially presiding, charged the jury in part as follows:

I will not recapitulate the testimony further than I deem it necessary in order to draw your attention to the question involved in the case, and enable you to see what the real issue is that you are trying, and also to understand the testimony. The plaintiff, herself, is not here; and it is stated that the reason of her not being present is the fact of her present physical condition being such that she could not appear here.  But we have her deposition, which has been read in your hearing.

[She testifies that when the train arrived at Sugar Run station it was dark; that she understood the train was two minutes late; that she sat in the rear car, about midway in the

Charge of Court below.

car, and that as the train approached the station the brakeman opened the door of the car, announced the station and the train stopped; that while the train was stopping, she immediately gathered up her satchel, her money bag and umbrella, which she had with her, and walked out; that when she got upon the steps of the platform she became aware that the train was moving; that she had her valise in one hand and her money bag and umbrella in the other hand; that she has no recollection of making any effort to step off; and in cross-examination she says that she stood but an instant, I think, and then knew nothing more; the next thing she remembered she was lying on the ground. Mr. Wooster is called, who, it seems, that evening was at the station, and was standing at the window, right inside the door; that the moment the train approached and he saw it stop, he started out of the door, and he did not go more than three or four steps, he says, until the train started. You have also the testimony of young Miss Morrison, who testifies that the train, in her judgment, did not stop five seconds. You have the testimony of her sister, who is probably mistaken, but will illustrate, probably, the shortness of the stoppage. She was called by the defendant, and she testified that she did not think the train stopped at all. We have also the testimony of one Mr. Sheldon, who testifies that he saw the two ladies, Misses Morrison, and this other lady, whom he did not know at the time, but who, undoubtedly, was the plaintiff in this case, get up and go out of the car; and that the train was moving, or moved before they got off; and he must, from his testimony, have suspected that an accident would occur, as he says he opened the window and looked out, and the train was moving at that time. The defendant then calls one Vangorder, who testifies that he was on the train, and that he saw these ladies get up and go out; and he also saw another lady, whom he never saw before and I believe has not seen her since, get up and walk to the door and then go back for something, and all this while, if his testimony is to be believed, the train was moving. This is all the testimony that I remember that bears directly upon this point, except the general testimony of the employees of the road, who state that they stopped, as they believe, the usual time.] [6]

If you find from all the evidence that the defendant was

Charge of Court below.

guilty of negligence, by reason of not stopping a sufficient time at this station to enable the plaintiff to get off in safety, the plaintiff still is not entitled to recover, unless you find that she was not guilty of negligence, and that there is no fault to be attributed to her in producing this injury. . . . .

The question, then, will be, if you find the company was guilty of negligence, did the plaintiff in this case, when leaving the car, exercise such reasonable care as a prudent person having due regard to his or her personal safety would, under the circumstances, have exercised? Did she leave her seat when the train stopped at Sugar Run station, with reasonable expedition, and go out, using reasonable care in so doing? But even if you should find, from the evidence, that you could answer these two questions in the affirmative, yet if she was at the time of attempting to get off the train conscious that the train was in motion, and by the exercise on her part of ordinary care and prudence she could have retreated and avoided the accident, she is guilty of negligence.

In law, it is presumed that a prudent person will not attempt, knowingly, to alight from a train while it is in motion. Therefore, when one undertakes to do so, such person is guilty of contributory negligence, if an injury occurs. If, however, the circumstances at the time were such that the plaintiff was not aware of the motion of the train, until it was too late for her, by the exercise of ordinary care and prudence, to avoid the fall or the going off, whether by falling or stepping, and the train had not stopped sufficiently long to enable her, by the use of reasonable expedition, to get off in safety, then she is free from fault, and the injury was caused by the sole negligence of the defendant, and she is entitled to recover. [She may be said to have exercised proper care and prudence, if, in a sudden emergency, she acted according to her best judgment, or if, because of want of time in which to form a judgment, she omitted to act in the most prudent and proper manner. The law will not hold one responsible for alleged negligence where it consists in the omission of a duty suddenly and unexpectedly arising, where the circumstances are such that the party has no time to think and is consequently unable to form a proper judgment before acting. In such case, all that is required is that the party act according to his or her best judgment at the time.] [7]

Charge of Court below.

Now, gentlemen, this case resolves itself, therefore, into a question of fact, and the pinch of the case seems to be whether or not the plaintiff contributed by her negligence in any degree to the accident. If it were true that the train was in motion while she was yet at her seat, and she, knowing this to be the fact before she got out of the car, went out and stepped down while the car was in motion, we instruct you, if such was the fact, that she would be guilty of contributory negligence. [On the other hand, if you find the fact to be that the train did not stop sufficient time to enable passengers who acted expeditiously and prudently to get off in safety, and that she was not aware of the fact of the train being in motion until she got out on the platform and undertook to step off, then she may be entirely free from fault,] [9] [if you are satisfied from all the circumstances under which it occurred that she acted at the time according to her best judgment, and that by reason of fright, when thus confronted so suddenly with the danger which she for the first time saw when she was stepping off, she was impelled to do what she might not have done if she had time to consider. If you find the facts and circumstances to be of such character as I have last stated, then she would be free from fault, provided you find that the defendant company was guilty of negligence, and the fact of stopping too short a time placed her in this position of danger.] [8]

I think the legal questions that are involved will probably be covered by our answers to the points submitted by the counsel in the case.

The defendant requests the court to charge:

2. Under the law of Pennsylvania, it is negligence per se for a passenger to alight from a moving train; and in order to escape this conclusion, the plaintiff must show affirmatively that after the train was moving she was induced by the train officers to leave the train, or that she had reason to apprehend greater danger from remaining on the train, or that the starting of the train and her stepping from it were simultaneous.

Answer: We affirm this point, as far as it goes, but it does not contain all the facts that, we think, cover this case. We therefore qualify this point, for the reason that it does not contain all the facts by which the presumption of negligence in alighting from a moving train may be overcome. In addi-

tion to what the point contains on this subject, we say to you that if the defendant company did not stop its train at the station a sufficient time to enable the plaintiff to alight with safety, and the plaintiff proceeded to leave the car with reasonable expedition and care, and did not discover that the train was in motion until she came to the steps of the platform and was descending them, then her position of danger was one occasioned by the negligence of defendant; and if the jury further find, from the evidence in this case, that the danger was so sudden and unexpected that she had no time to deliberate and choose between the danger of remaining on and stepping off, and that under all the circumstances she acted according to her best judgment, then she is free from fault, and it does away with the presumption of negligence arising from the fact of alighting from a moving train.[1]

4. If the evidence shows that at the time the plaintiff reached the platform of the car before alighting, the train was moving, and that if she had used her senses she should have been aware of the fact, and notwithstanding this fact she jumped from the car, this constitutes contributory negligence, and the plaintiff cannot recover.

Answer: We affirm this point, if you find no other facts in the case than what are stated here. But if you find the facts which we have stated to you, in our answer to the second point, and find that she was placed in the position in which she was at the time she alighted or was about alighting from the car, by the negligence of the defendant, and that the suddenness of the danger which confronted her was such as to deprive her of power to form proper judgment and make a judicious choice, then, although she might have retained her senses to a certain extent, she would still be free from fault. If she got into a position of danger through no fault of hers, but solely through the negligence of the defendant, she cannot be held responsible for a mistake of judgment in attempting to get out of the danger.[2]

5. If the undisputed evidence on both sides shows that at the time the plaintiff reached the steps of the car before alighting, the train was moving, and that she was aware it was moving, and notwithstanding this fact she jumped from the car, this constitutes contributory negligence and the plaintiff cannot recover.

Charge of Court below.

Answer: We affirm this point, provided you find that she did jump from the car, and at the time of so doing she was in such a condition that she was able to judge as to whether it was a judicious and proper act or not.[3]

6. Under the law and the evidence in this case the plaintiff cannot recover.

Answer: We refuse to charge you as asked in this point. We think there are sufficient disputed facts which warrant us in submitting it to you for determination.[4]

The plaintiff requests the court to charge:

3. If, when the train stopped at the Sugar Run station, the plaintiff proceeded to leave the car with reasonable expedition and care, and, when she was on the steps of the car platform, was thrown off by reason of the movement of the train before she had sufficient time to alight, and in consequence of the movement of the train was thrown off and injured, without any fault on her part, she is entitled to recover.

Answer: Affirmed.[4a]

4. If the jury find from the evidence that the railroad company was guilty of negligence in not stopping its train a sufficient time to enable the plaintiff to alight with safety; that when the train stopped at the station, the plaintiff proceeded to leave the car with reasonable expedition and care; that when she reached the steps of the car platform and was descending them, she then for the first time discovered that the train was moving; that her position was then one of danger, occasioned by the fault of the defendant starting the train too soon, she is not chargeable with contributory negligence, if, realizing the danger in the excitement of the moment and without time to deliberate and choose between the danger of remaining on and stepping off, she voluntarily stepped off; and much less is she so chargeable if, under such circumstances, she stepped off by reason of the loss of her self-possession and not knowing what she did.

Answer: We affirm this point, except to say to you that "if she voluntarily stepped off," and was at the time in such condition that she was competent of judging as to her safety, then her "voluntarily stepping off" might not be good law; but, if it was done under an impulse of the moment, and she was utterly incapable, by reason of the suddenness of the danger

confronting her, to form a proper judgment and to act with any greater prudence, then, of course, in making a choice, such as she did, although it might be a dangerous one, she would still be held to be free from fault.[5]

5. If entitled to recover, the verdict should be for such an amount as will compensate the plaintiff for the injury sustained, so far as the same was occasioned by the neglect of the defendant; and in fixing the amount, the jury may take into consideration the expenses incurred for medicine and medical attendance; reasonable expenditures for nursing;[*] the diminution of earning power; the mental and bodily suffering endured and likely to be endured in the future.

Answer: We affirm this point; the measure of damages in this case is correctly stated in this point.[10]

—The jury returned a verdict for the plaintiff for $11,000. A rule for a new trial was discharged, on condition that the plaintiff remit $3,000 of the verdict. This condition having been complied with, judgment was entered on March 16, 1891, in favor of the plaintiff, for $8,000; whereupon the defendant took this appeal, assigning for error:

1–4. The answers to defendant's points.[1 to 4]

4[a], 5. The answers to plaintiff's points.[4a 5]

6–9. The parts of the charge embraced in [ ] [6 to 9]

10. The answer to plaintiff's point.[10]

*Mr. J. D. Hancock* and *Mr. J. H. Donly* (with them *Mr. W. G. Trunkey*), for the appellant:

1. In the absence of any account by the plaintiff as to how she got off the train, it was the duty of the court to accept, we submit, the only account the testimony afforded, to wit, that she walked or jumped off. To sustain the judgment in this case, would require this court to go the whole length of overturning the settled law of Pennsylvania, that it is negligence per se for a passenger to alight from a moving train. This rule has uniformly been laid down: Railroad Co. v. Aspell, 23 Pa. 149; McClintock v. Railroad Co., 21 W. N. 133;

---

* There appears to have been no evidence of the value of the medicine, medical attendance and nursing. There was evidence that the plaintiff had been continuously under the care of physicians until about the time of the trial, and that she had had a hired nurse for about two months.

Arguments.

New York etc. R. Co. v. Enches, 127 Pa. 323. The plaintiff was bound to show affirmatively sufficient facts to constitute a legal excuse for so alighting; not by conjecture: Howard Exp. Co. v. Wile, 64 Pa. 201; First N. Bank v. Wirebach, 106 Pa. 37; nor by testimony which is contradicted by the admitted facts in the case: Marland v. Railroad Co., 123 Pa. 487; Penna. R. Co. v. Bell, 122 Pa. 58; Carroll v. Railroad Co., 2 Penny. 159; s. c. 12 W. N. 348.

2. The excuses allowed for alighting from a moving train are well defined by this court. This is justifiable when the commencement of the motion of the train and the alighting therefrom are practically simultaneous; when the passenger is induced to alight by an officer of the train; or, when the passenger has reason to apprehend greater danger from remaining on the train than from leaving it: Del. & H. Can. Co. v. Webster, 18 W. N. 339. Applying these well-defined rules to this case, we find an utter want of competent proof of the legal excuses necessary to overcome the presumption of negligence on the part of the plaintiff. There is no evidence in support of the hypotheses of the plaintiff's points, nor are the qualifications added by the court to the defendant's points on this subject justified by the testimony. The doctrine of Johnson v. Railroad Co., 70 Pa. 357, has not been re-affirmed, and it is inconsistent with the principles uniformly held in other cases. And the court erred in allowing the jury to include in the damages charges for medicine and medical services, without proof of the extent and value thereof. Moreover the testimony was not fairly reviewed in the charge.

*Mr. William D. Brown* (with him *Mr. W. D. Hinckley* and *Mr. William E. Rice*), for the appellee:

Counsel cited: (1) On the burden of proof respecting contributory negligence, Mallory v. Griffey, 85 Pa. 275; Schum v. Railroad Co., 107 Pa. 8; Reading etc. R. Co. v. Ritchie, 102 Pa. 425. (2) As to the submission of the case to the jury: Penna. R. Co. v. Werner, 89 Pa. 59; Penna. R. Co. v. Coon, 111 Pa. 430. (3) As to the limitations of the rule that it is negligence to alight from a moving train: Penna. R. Co. v. Kilgore, 32 Pa. 292; Penna. R. Co. v. Peters, 116 Pa. 206; Johnson v. Railroad Co., 70 Pa. 357.

Opinion of the Court.

OPINION, MR. JUSTICE CLARK:

This action is brought by Neva E. Leggett against the Western New York & Pennsylvania Railroad Company, to recover damages for personal injuries received through the alleged negligence of the company's employees. On the 14th December, 1889, the plaintiff, who was a young lady of twenty-two years, was a passenger on the defendant company's road. She took the train at Corydon, and arrived at Sugar Run, the place of her destination, about six o'clock in the evening. Putting her story in narrative form, she relates the occurrence substantially as follows:

"I sat in the rear car about midway. As we approached Sugar Run, the brakeman opened the door and called the station. He closed the door and walked out. The train came to a stop. I had with me a money satchel, a valise, and an umbrella. I gathered them together as quickly as possible, and started out. I didn't stop anywhere or speak to any person between that and getting off: there was no one on the car I knew. I opened the door and walked out, and was on the steps, when I became aware that the train was moving. I saw that we were passing the lights in the depot: that was what made me aware that it was moving. There was no brakeman or conductor to be seen, and there was no light, because we had passed the depot. It was very dark, dark as night could be: there was not even a star. In my right hand I had my umbrella and satchel; in my left, the valise. I have no recollection of making any effort to get off. The next thing I remember, I was lying on the ground, and heard the voices of two or three men who had just approached. The depot agent came then with his light. I could not tell whereabouts on the steps I was; I cannot remember. I had not hold of anything. I did not have hold of the guards. It was only an instant, and I still had hold of my baggage. I did not lose consciousness. I fell forward with the right arm extended, and it was dislocated at the shoulder. I did not fall toward the engine. I fell just straight forward from the steps. Mr. Lawson, the station agent, picked me up; there were two others; I didn't know them." On cross-examination, she testified, among other things, as follows: "I took the train about 5.40 P. M. It is six miles from Corydon to Sugar Run. When we arrived there it was not quite six o'clock. I under-

Opinion of the Court.

stood the depot agent to say that night we were about two minutes late. The brakeman's name I have since learned was Harry Farrand. There were two passenger-cars on the train. The satchel was about five inches square, a lady's shopping bag. The valise was of good size, and was quite heavy. When they called the station, I got my baggage ready, and waited till they stopped. When I came on the platform, I did not notice the train was moving. When I stepped on to one of the steps, can't say which, I noticed the train was moving. Can't say how far it had moved; it was not moving more rapidly than usual, when it moves out of the station. Do not know how long they stopped. I realized they had stopped, and then that I was on the step. I just remember standing there for an instant, and I remember no more. I didn't think anything about stepping off the train whilst it was moving: hadn't time to, I was off so soon after I realized they were moving." There is some evidence that after she had started to the door she seemed to have forgotten something at her seat, and that she returned for it before going out upon the platform. Of this circumstance, if it occurred, she makes no mention.

The negligent act of the company complained of is that the train did not stop long enough at the station to give the plaintiff a reasonable opportunity to get off the cars in safety, and that in consequence of this she received the injuries. It was the undoubted duty of the company, not only to carry the plaintiff safely, but to set her down safely at the place of her destination, if, in the exercise of the utmost care, it could be done. The company was, of course, not answerable for the rashness or folly of the plaintiff; she was bound to exercise ordinary attention for her own safety, even though the company's agents in charge of the train were also remiss in their duty.

Richards, the conductor, testifies that the train made the "usual stop," and that when the brakeman, as was customary, hallooed "All right here," he gave the signal to start. Crahan, the engineer, says they made the "ordinary stop," and he started as soon as he got the signal from the conductor. Tyler, the baggage-master, says he remembers nothing more than that it was the "usual stop;" and Davis, the fireman, that the train stopped the "usual time," and until they got a

signal to go. Harry Farrand, the brakeman, who hallooed " All right here," as a signal to start, was not called as a witness. All that the testimony discloses concerning his movements and whereabouts, during the occurrence, is that as soon as the train stopped, or before, he ran forward to the engine. He did not assist the passengers to get off the train, as it was his duty to do under the regulations of the company, nor was there any person with a light at the place of landing. If he had remained at his place of duty, he would have known that the passengers were not yet off, when he gave the signal to the conductor. As it was, although the accident occurred at the exact place where he should have been, neither he nor any other of the trainmen appear to have been aware of its occurrence until they arrived at Kinzua, where the conductor received a telegram announcing the fact. John Wooster testifies that just as the train stopped he started out of the station, and when he had taken four or five steps it started; that he saw the two lady passengers who were in advance of Miss Leggett, the Misses Morrison, get off after it started, and that it " staggered one of them, and she ran quite a ways." Fannie Morrison says the train was in motion just as she got off; when asked how long the train stopped, she replied, " I should say five seconds." She further says that neither the conductor nor the brakeman was present to assist them, nor was there any light. Her sister Maud, who alighted from the train after Fannie and was called as a witness for the company, says the train made something of a halt, but she did not recollect of it stopping entirely: it was moving when she got off. Miss Leggett was behind both these ladies, and the testimony would seem to show that the train had moved some sixty feet before she went off. Mr. Sheldon testified that the train made a very short stop, and started about the time the first two ladies got to the door. He says he looked out of the window " to see where some of them landed."

In view of this evidence, the court was obliged to, and did very properly, submit the question to the jury, as follows: " Now, did the defendant company discharge this duty to the plaintiff? It is alleged by the plaintiff that when the cars arrived at Sugar Run station, which was the point of her destination, the train was not stopped a sufficient time to enable

her to get off in safety, and that in consequence thereof she sustained serious injuries. This is the first question that presents itself for your consideration; for, if the defendant was not guilty of negligence, if the train stopped a sufficient time to enable the plaintiff to get off in safety, by using that degree of care required of every prudent person, then there can be no recovery in this case." The reference to the facts which followed was full and fair: we find nothing to complain of. The charge upon this branch of the case was impartial, and not one sided, as the appellants contend. The trainmen testified to nothing of value to the defendant bearing upon this question, excepting that they made the usual stop, and their testimony to that effect was called to the attention of the jury. Under this instruction of the court, the verdict of the jury convicts the company of negligence, and it is difficult to see how any jury could have determined otherwise.

The negligence of the company being thus established, the question arose, was the plaintiff guilty of contributory negligence? Upon this branch of the case the burden of proof was upon the company. The company's contention in the court below was that the plaintiff had voluntarily stepped or jumped from the train whilst it was in motion, and there is some testimony to this effect. Mr. Morrison testifies that, after the train was in motion, he saw her "walk down the steps off and get off,"—"saw her walk off, step to the ground." But, as the night was dark, and he was some fifteen feet distant, the jury may well have believed it impossible for him to know whether she actually stepped off, or fell off, as she states. Mr. T. H. Jones says the plaintiff told Wilmarth, the company's detective, three or four days after the injury, in his presence, that she threw the packages and jumped off the train. Mrs. T. F. Jones, however, who was present at the same conversation, says that the plaintiff said she "threw the packages" and "that was all she remembered," and that she said she thought if she hadn't so many packages she might have got off safely. This testimony was, of course, proper for the jury. It was not specifically or particularly referred to in the charge; there was much testimony on both sides to which no reference was made. But the general subject to which it referred was fully discussed. Whether or not she stepped down, or jumped from

the moving train, was a question of fact very fairly submitted
to the jury, to be determined upon all the evidence, with spe-
cific and plain instructions that if she did so, unless in a sudden
emergency, with danger threatening in either event, she was
guilty of contributory negligence, and could not recover.   This
qualification of the general rule, so well settled in our cases, is
only applicable to the case at bar if the jury should find that
she left the step of the car voluntarily.   The points submitted
by the defendant's counsel proceed wholly upon the hypothesis
that the plaintiff left the steps of the car either by deliberately
stepping or jumping off, and undertakes to define the precise
and only circumstances which would justify such an act.   The
court simply supplemented the points by adding another state
of facts, which would justify the act.   But the other circum-
stances thus suggested, like those suggested in the point, were
only applicable to the case under the defendant's theory upon
the facts, and was pertinent in that aspect of the case only.
If the plaintiff was believed, the instant she found herself in
an emergency she went off the train.   She says that when she
came upon the steps of the car she for the first time knew that
the train was moving, and at that instant, although she was con-
scious of no effort on her part to leave the car, she went off
the train, falling on her shoulder.   She does not pretend that
she acted upon her best judgment, in an emergency, with dan-
ger threatening, whether she remained upon or left the car.
She says she had no time for deliberation, and she did not pre-
tend to have deliberated.   The defendant cannot complain of
instructions, even in the general charge, which were thus in-
vited in the points, and without which the answers would have
been imperfect.   Besides, we think the effect was to give the
defendant another chance with the jury, more than it would
otherwise have had.

   Upon an examination of the whole case, we are of opinion
that it was fairly tried.   The company failed to satisfy the
jury that the plaintiff, by her own negligence, had contributed
to the injury, and, as the company's negligence was clearly
established and found,

                                   The judgment is affirmed.