CHARLES WILLIS, Respondent, *v.* THE LONG ISLAND RAIL-
ROAD COMPANY, Appellant.

Passengers are not to be deemed guilty of negligence for standing on the plat-
form of cars in motion, when there are no vacant seats for them within the
cars.

It is no part of the duty of passengers to enforce the regulations of the com-
pany, involving interference with passengers: that duty devolves on the con-
ductor, agents or employés of the company.

It is not the duty of passengers to pass from one car to another, in search of
seats, while the cars are in rapid motion.

The passenger owes no duty to a railroad company to select for himself the
safer seat on the train. It is the duty of the company to the passenger to
make all seats safe.

The plaintiff was injured by an accident to the cars while in motion, while he
was standing on the platform of the car, being unable to find a seat within
the cars. *Held,* that the defendants were liable.

APPEAL from a decision of the Supreme Court in the
second judicial district, affirming a judgment in favor of
the plaintiff, recovered on the verdict of a jury at the Queens
Circuit, on the trial before Mr. Justice LOTT, in October,
1859.

The case as heard at Special Term by Judge EMOTT on a
motion for a new trial, is reported in 32 Barb., 398.

The action was for damages resulting from injuries received
by the plaintiff and his minor son through the negligence of
the defendant.

The plaintiff was a farmer residing at Hempstead, and on
the 3d of September, 1857, he took passage at Hempstead
Branch for Brooklyn, in company with his son, who was on
his way to Schenectady for the purpose of entering Union
College. They had been waiting some time at the station
when the cars arrived. There was no one there to receive
their trunk and put it on board, and they had to carry it
themselves and hand it to the baggage master in the cars.
The plaintiff received his check, and as the train was by
that time in motion, they got on the front platform of the
passenger coach next in rear of the baggage car. The

plaintiff had on other occasions seen the usual printed notice not to stand on the platform. They passed into the coach and were unable to find a single seat unoccupied. The train was then in rapid motion. They returned to the front part of the car along the passage way, in which several others were standing unable to find seats, when three ladies advanced from the other end of the car, who were also in quest of seats, and the plaintiff and his son made way for them by stepping back on the front platform. The conductor came out from the baggage car, and in answer to the inquiry of the ladies for seats, told them that was the baggage car, and they stepped back from the platform into the car. The conductor then received the plaintiff's fare, and the son after standing with him a few moments returned into the car, and being still unable to find a seat, stood inside in the passage way and was there at the time of the collision, the plaintiff remaining in his former position. The cars were moving at a very rapid rate of speed, and much faster than usual. The rails were in good condition. It was between three and four o'clock in the afternoon. The track was straight, and there was a clear and open view in front of the engine for two miles. There were two pieces of wood, from five to eight inches in thickness, each twelve feet in length, one of hickory and one of oak, lying on and across the rails directly in view, a mile and three-quarters or thereabouts from Hempstead Branch. Upon these the engineer drove the train with such velocity, that the baggage car was crushed between the tender and forward coach and the front of the latter broken in by the collision. The father who was on the platform, and the son, who was standing on the inside of the car, were both severely injured. The son, though badly hurt at the time, recovered in three or four weeks so as to be able to dismiss his crutches; but the father was permanently crippled.

Upon this state of facts the defendant moved for a nonsuit, and the motion was denied by the judge.

The defendant then introduced contradictory evidence in respect to a portion of these facts. Evidence was given

tending to show that until the engine arrived within about
a quarter of a mile of the obstructions, the engineer's view
of them was intercepted by some of the defendant's track-
men; that the train was then moving at a rate of only about
twenty or twenty-five miles an hour; that the whistle was
blown, the engine reversed and the brakes applied, and yet
that in this intermediate quarter of a mile they not only did
not serve the purpose of stopping the train, but did not
essentially reduce its speed, and that the engine, when it
encountered the obstructions, was still running at the rate
of ten or fifteen miles an hour. An attempt was made to
show that the wood which was upon the rails was not there
by the negligence of the defendant; but the conductor of
the preceding train, by whom it was sought to prove the
fact, admitted that one of his cars was laden with wood of
that description, and that a portion of it was missing when
he arrived at Jamaica. The fact was undisputed that the
obstructions were such as unavoidably to throw a car off
the track, and that they were not removed by the defendant's
employés, who were working upon the track at a point
where the obstructions were in plain and open view.

The defendant gave proof tending to show that there were
vacant seats in the rear of the third passenger coach. The
fact that there was no seat unoccupied in the front car was
substantially undisputed. It was proved positively by three
witnesses, each of whom made particular examination for the
purpose of finding a seat. Two witnesses were called by
the defendant to disprove this; but both admitted that they
had nothing but an *impression* that there were vacant seats
in this car. One of these witnesses, however, professed to
remember that two ladies had a bench before them on which
two passengers might have sat, but that it was occupied by
their baskets and traps; and that opposite to them was an
English mariner, who had been wrecked with these ladies,
who was a very stout man, over fifty years of age, and who
occupied an entire seat, reclining and dozing part of the time.

An attempt was also made to show that the plaintiff and
his son were smoking, which was positively denied by both.

The engineer, upon whose testimony the defendants mainly relied to absolve them from the imputation of negligence, was asked on his cross-examination, if he did not state the same afternoon, after the accident, and in the presence and and hearing of Mr. John S. Carpenter, that he saw the obstruction in time to stop the train, but thought the cow-catcher would turn it off, or words to that effect. He swore that he did not; and Mr. Carpenter, a disinterested witness, and a passenger on the train, afterward testified, that he was standing by to ascertain the cause of the accident; and that the engineer then said that he saw the sticks on the track time enough to stop, but thought he could knock them out of the way. The engineer was not recalled, and no explanation of the statement was given.

The judge charged the jury in substance, among other things that, unless the defendants were guilty of negligence in the conduct of the train, the plaintiff could not recover; that the question whether they were guilty of such negligence was one of fact, to be determined upon the evidence; that it was for them to say whether the cars were running at an undue rate of speed when they encountered the obstructions, and whether it was or was not due to the negligence of the defendants that the obstructions were there, or the train so run as to be thrown from the track by them; that it was for them to determine from the proof whether there was want of care on the part of the engineer, in not observing the obstructions earlier, or in not stopping the train in season to avoid the injury, and that on the latter question, if they found that the engineer made the declaration attributed to him immediately after the occurrence, it would tend to affect his credibility on a material branch of the case.

The judge also instructed the jury, in substance, that even if they should find that the defendant was guilty of negligence, the plaintiff was not entitled to recover, if there was any negligence or fault on his part, which either occasioned or contributed to the injury.

In the course of his observations on the proof that the plaintiff was standing on the platform, and that passengers

were forbidden to stand there by notices posted in the cars, he instructed them in effect, that upon the state of facts presented by the evidence, if they were satisfied that there were no vacant seats in the car, the plaintiff was not chargeable with negligence for standing on the platform; that even if there was a seat in the car, which might have accommodated two persons, but which, as in the case of the English shipmaster, was occupied by one, in such a way as to exclude another occupant, the plaintiff did not owe to the defendants the duty of displacing him; nor was he under any obligation, in the alleged case of the two shipwrecked ladies, to require them to vacate the bench in front of them, on which they had deposited their baggage; that the duty of enforcing the regulations of the company, involving interference with passengers, devolved properly on its own agents and employés, and that it was the part of the conductor to see that when seats were improperly occupied, they should be vacated for the benefit of those who were thus compelled to stand; that the company was not absolved by the statute from liability for injuries to passengers while riding on the platform of a car, unless it provided room inside for the proper accommodation of its passengers; (Laws of 1850, 234); that mere space on the inside in which to stand between the seats was not, ordinarily, such proper accommodation; that if the jury found that there were in fact no vacant seats in the car, it was for them to determine whether there was negligence on the part of the plaintiff in standing on the platform, even if there was room to stand in the inner gangway; that if the defendants did not give the plaintiff time, at starting, to pass into a car with proper accommodations for passengers, it was not a breach of duty on his part, to decline the risk of passing from car to car in pursuit of a seat, while the velocity of the train was such as to render it hazardous to his safety.

Exceptions were taken to those portions of the charge which were adverse to the defendant, and the judge was requested to give instructions of an opposite tenor, which were shaped in a great variety of forms, but which he declined to adopt, and the defendant excepted to the refusal.

The jury found a verdict in favor of the plaintiff for $3,100. A new trial having been denied at the Special Term, and the judgment having been affirmed at the General Term, the defendant appealed to this court.

*A. J. Vanderpoel,* for the appellant.

*Wm. H. Onderdonk,* for the respondent.

PORTER, J. This cause was well tried. The questions of fact were properly submitted to the jury; and both parties had the benefit of a clear and accurate exposition of the law in its application to the various issues involved. There is a full and able discussion of all the material questions in the opinion delivered by Judge EMOTT in the court below, and in the views then expressed we entirely concur. (32 Barb., 398.) It will be sufficient, therefore, to state briefly our general conclusions.

That the defendant was guilty of negligence is obvious. The engineer, charged with the safety of some hundreds of human lives, drove a train of cars, in broad daylight, at the rate of ten or fifteen miles an hour, against obstructions lying directly across the track, and visible, as he concedes, for a distance of more than a quarter of a mile before he reached them. His excuse for the act, given immediately after the collision, was that, though he saw the obstructions in season to stop, he thought he could knock them out of the way. If he was in a condition to be indifferent and reckless in regard to his own safety, he had no warrant for exposing the lives of others to the hazard of an experiment so foolhardy and perilous.

There was no negligence on the part of the plaintiff which contributed to the injury. It is claimed, in behalf of the appellant, that, irrespective of the statute, it is negligence *per se* on the part of a passenger to stand on the platform of a moving car; and that he thereby forfeits all claim to redress against the carrier for injury by culpable negligence; and this, though his act in no manner contributes to such

injury.   In respect to each branch of the proposition, the law is otherwise.

There is no rule of the common law which makes it the duty of the passenger to the carrier to select a position in the vehicle least exposed to danger through the wrongful act of the proprietor.   A seat on the outside of a stage coach may be more hazardous than an inside seat if the driver negligently overturns it on a pavement or a hill side; but the selection of that position is neither negligence *per se* nor tributary in a legal sense to the injury.

In the present case, it is manifest that the plaintiff was not in fault.   Through the absence of the usual employés, he and his son were compelled to put their own baggage on the cars.   The train started immediately, and they had no choice but to take the nearest coach.   They paid the conductor for seats, but found, on examination, that all were occupied. They and others were, for that reason, compelled to stand; and the conductor neither rendered them any aid, nor informed them that there were vacant places in the rear cars.   The speed of the train was such as to render it hazardous to pass from car to car, and the gangways being occupied by ladies and others in quest of seats, the plaintiff and his son took such standing places as were least inconvenient and nearest at hand.   Both were injured by the collision, one being inside the cars and the other on the platform at the time it occurred. It may well be said that, if they had been furnished with the accommodations for which they were required to pay, both would have escaped unharmed; but they were clearly guilty, in this regard, of no breach of duty to the defendant.

Their position, whether judiciously or injudiciously selected, so far as they were concerned, was lawful under these circumstances as between them and the company; and, in legal contemplation, it neither caused nor contributed to the injury. The law on this subject was settled in the leading case of *Carroll* v. *The New Haven R. R. Company*, in which the question was directly involved; and the judgment of the Superior Court in that case was subsequently affirmed in this court. (2 Duer, 571; 6 id., 415, 416.)   It was very properly

held in the case of *Colegrove* v. *The New Haven and Harlem Companies*, that it did not necessarily follow that *no* fault of the plaintiff could excuse the defendants from liability, unless it had the effect to produce the *collision* that caused the injury; but in that case, as in the other, the court affirmed the judgment and sustained the plaintiff's recovery, the jury having been instructed that "if the company undertake to carry in any one car more than they can accommodate with seats, so that some are of necessity forced to stand upon the platform, and have no opportunity before the train is under way to find seats in other cars, such persons are there by permission of the company, and are lawfully there; and the company can claim no exemption under the statute, no matter how conspicuously their notices may be posted in the interior of the cars." (20 N. Y., 492; 6 Duer, 382.) The rule, as settled in the case of *Carroll* v. *The New Haven R. R. Company*, has recently been reaffirmed by a unanimous decision of this court. (*Halsey* v. *Earle*, 30 N. Y., 208.)

The Supreme Court was also right in holding, that under the statute the defendant was not absolved from liability; if the jury found from the evidence as matter of fact, that the plaintiff had neither time nor opportunity to proceed to the rear cars in search of a seat, without exposure to hazard in passing from platform to platform while the train was in rapid motion; that there was no seat unoccupied in the coach on which he was riding; and that he was guilty of no actual want of care in the selection of a position in which to stand, until he could obtain the accommodation to which he was entitled.

The statute, under which the defendant claims absolution, provides that "in case any passenger shall be injured while on the platform of any car in violation of the printed regulations of the company posted up at the time in a conspicuous place, inside of its passenger cars then in the train, such company shall not be liable for the injury, *provided the said company at the time furnished room inside its passenger cars sufficient for the proper accommodation of its passengers.*" (Laws of 1850, 234, sec. 46.) When the

company fails to comply with this condition, it must find other grounds of immunity, if it would avoid responsibility for its wrongs. It is not sufficient that there may have been proper accommodations in other cars not accessible to the passenger; nor that he might possibly have procured for himself the accommodations which the defendant failed to furnish, by displacing the person of one and the property of another, in the exercise of an authority which appropriately belonged to the conductor. He owed no such duty to the defendant, and he forfeited none of his rights by submitting to a temporary inconvenience, to which he was subjected against his wish and through no fault of his own.

The judgment should be affirmed.

SMITH, J. The principal questions in this case are those usually arising in actions founded on negligence, to wit, first, was the injury of which the plaintiff complains, occasioned by the negligence of the defendant or its servants? and secondly, is the plaintiff chargeable with negligence which contributed to the injury?

It cannot be seriously questioned that the evidence warranted the jury in finding negligence on the part of the defendants. In the first place, it was fairly to be inferred from the testimony, that the pieces of wood or timber, by which the cars were thrown from the track, were dropped from another train belonging to the defendant, which had passed over the track a short time previously, and was loaded in part with such pieces of timber. In the next place it was a question whether the person having charge of the engine, could not and ought not to have seen the obstruction on the track in front of him, in time to have checked the speed of the train, and prevented the disastrous collision which ensued. It was also a question whether the servants of the company in charge of the road and of the trains, could not and ought not, either to have prevented the falling of the sticks of timber from the train while in motion, or to have removed them from the track, or to have discovered them there, and warned an approaching train in season to have prevented

any injurious consequences. If the defendants were at fault in either of these respects, they were chargeable with negligence. It is the duty of a carrier to exercise the highest degree of human foresight and skill to provide for the safety of his passengers. Under the circumstances of the present case, the questions whether the defendant's employés exercised a proper degree of diligence and caution, belonged to the jury and were properly submitted to them by the court.

The wisdom of the time-honored rule of the common law which refers questions of fact to the jurors, and questions of law to the judge, is not more conspicuous in any class of civil cases, than in those which involve questions of negligence. Cases of that nature frequently come before the courts, in which men of equal intelligence and judgment differ in their conclusions, simply because they differ in experience and habits, in temperament or mental organization. A course of conduct which seems sufficiently careful to a self-reliant man who is accustomed to act promptly, may appear reckless to one who is unusually circumspect or hesitating. That *average* judgment which is the result of the deliberations of twelve men of ordinary sense and experience, is recognized by our jury system as a juster standard than the judgment of one man of equal experience and sense, in the determination of questions of fact, and it is especially valuable in the decision of questions of negligence. On the trial of an issue of that nature, if there is any doubt, however slight, either as to what facts are established by the testimony, or as to the conclusion in respect to the fact of negligence that may be drawn legitimately from the circumstances proved by the average of men of common sense, ordinary experience and fair intentions, the case should not be taken from the jury. It is only where the case is entirely clear upon the testimony, where there is no room for rational doubt, either as to the circumstances proved, or as to the conclusions of fact which may properly be drawn from them, that a judge is justified in deciding a question of negligence as matter of law. In the present case the court properly submitted the question of the defendant's negligence to the jury and their

finding upon that branch of the case, is fully authorized by the testimony, and is conclusive.

The other branch of the case although equally free from difficulty, requires a more extended examination. As the plaintiff was standing on the platform of the car on which he was riding at the time of the accident, the question arises whether by reason of that circumstance he is chargeable with contributory negligence which precludes him from recovering damages for the injury to himself.

The testimony on the part of the plaintiff tended to show that when the train arrived at the Hempstead station, the plaintiff and his son immediately carried their trunk from the platform on which it was standing, and on which baggage awaiting the cars was usually placed, to the baggage car, they discovering no employé of the company to perform that service; that before the baggage master received it and gave a check for it; the train was in motion; that as soon as they obtained the check they got upon the front platform of the first passenger car while it was in motion; that they immediately went inside the car to look for seats, and found they were all occupied; that there were three ladies in the passage way of the car looking for seats and coming toward them; that the plaintiff and his son then went out again to the front platform; that while they were there the conductor came out of the baggage car and took their fare; that soon after he left them the plaintiff's son went inside the passenger car, and stood leaning against the door, and the plaintiff remained outside on the platform; and that, in a few minutes thereafter, and while they were in those positions, the train was suddenly stopped by coming in contact with the sticks of timber or poles lying across the track, the baggage car and the front passenger car were driven against each other with great violence, and the injuries were inflicted of which the plaintiff complains. The facts above stated were established by the verdict. In addition to them, the testimony on the part of the defendants tended to show that the train consisted of six passenger cars; that several of the cars in rear of that on which the plaintiff and his son were riding there were

vacant seats; that in the car which the plaintiff entered, one whole seat, or a seat for two, was occupied by a single male passenger, who was reclining thereon, and another whole seat was taken up with parcels belonging to passengers; and that a notice that passengers must not ride on the platform was posted in a conspicuous place inside each of the cars.

Upon this state of facts, it seems clear that the circumstance that the plaintiff was standing on the platform when he was injured, does not constitute a defense to the action, either under the statute of 1850 (Laws of 1850, p. 234, ch. 149, § 46), or independently of the statute.

The provision of the statute is in these words: "In case any passenger on any railroad shall be injured while on the platform of a car, or on any baggage, wood or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place inside of its passenger cars then in the train, such company shall not be liable for the injury, provided said company, at the time, furnished room inside its passenger cars sufficient for the proper accommodation of the passengers."

The proviso contained in the section above transcribed, was not complied with by the defendants in the present case. "Room inside the cars sufficient for the proper accommodation of passengers," means a *seat* for each passenger; not standing room in the passage way. It means too, a *vacant* seat; not one occupied by another passenger, either with his person or his luggage, although so occupied improperly; and the seat must be furnished *by the company*, so that if it be improperly occupied in a manner to exclude those seeking seats, the incumbrance must be removed by the conductor or other employé of the company, and not by the passenger seeking proper accommodation. It may be assumed, as suggested by the defendant's counsel, that a courteous person thus occupying a seat would surrender it, on request, or indeed without request, on seeing the need of his fellow passenger, but the question is not what civility would dictate in such a case, but what are the rights and obligations which the law will recognize and enforce. A passenger entering a

car, has no means of knowing whether a seat filled with luggage, or a whole seat taken up by one person is thus occupied rightfully or not. In either case the seat may belong to some one on the train who is not sitting in it at that moment. No rule should be laid down by the courts which will compel a passenger seeking a seat to assume the risk of trespassing on the rights of another, or of engaging in a personal controversy, or perhaps a forcible collision with a prior occupant, in order to get possession of a seat, or to keep it after he has obtained it. Nor should he be forced to ask as a favor from the courtesy of a fellow passenger that which is due to him from the company as a right. There is not the slightest necessity for subjecting passengers to annoyances of this description; the conductor can easily prevent them. He knows whether a seat in his train which is taken up in the manner above stated, is properly occupied or not; and he has authority to displace an improper occupant. The management of the train is in his hands, and a faithful discharge of his duty to his employers involves the performance of certain obligations to each passenger under his care. It is as much his duty, as the agent of the company, to see that each passenger is furnished with a proper seat, as it is to require him to pay his fare. In this case, the conductor received the plaintiff's fare while he stood on the platform, but did not object to his occupying that position, nor make any effort to furnish him with a seat inside.

Standing room in the passage way is not proper accommodation for passengers. That part of the car is just what its name indicates, a *way* through the car. Each passenger seated in the car has a right to pass along the way at any and all times, and he, therefore, has a right to insist that it, shall be at all times open and unobstructed. The company can not rightfully compel a passenger to stand in it, instead of furnishing him with a seat, and even if he consents to do so, they have no right to place him there as against the passengers who are seated.

The defendant's counsel has argued that the proviso of the statutes was complied with, since there were vacant seats

in several of the cars in the rear of that which the plaintiff and his son entered.    But the plaintiff was not obliged to incur the peril of passing from one car to another, while the train was in motion.    If the train had stopped before the accident long enough to give him an opportunity to go into a car where there were vacant seats in which he and his son could have been accommodated, and he had neglected to do so, there would have been force in this position of the defendant's counsel.

It was the fault of the company and not of the plaintiff that he was on the platform when he was injured.    He was there, simply because the company had not furnished proper accommodation for him inside of the car, and for that reason the company cannot avail themselves of the statute.

The foregoing reasoning is equally decisive of the case, if it be considered independently of the statute.    So far as the statute recognizes an obligation on the part of railroad companies to furnish their passengers with proper seats inside of their cars, it simply affirms a principle of the common law, and enforces a duty springing from their relations as carriers of passengers, and their undertaking with each passenger to transport him safely and properly over their road. As the defendant in the present case neglected that duty, and the plaintiff rode on the platform because the company did not provide him with suitable and reasonable accommodation within the cars, the circumstance of his being in that position when he was injured does not relieve the defendant from liability.    The case bears no analogy to that of a passenger, who, being furnished with suitable accommodation inside the car, unnecessarily and heedlessly protrudes his head or arm from the car window, and in consequence receives an injury.

The views above expressed meet all the questions in the case which merit attention, and as the judgment appealed from is in accordance with them, it should be affirmed.

All the judges concurring,

Judgment affirmed.