(5 App. Div. 22.)

### MAHAR v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. April 18, 1896.)

1. CARRIERS—INJURY TO PASSENGER AT STATION—CONTRIBUTORY NEGLIGENCE.

   There was evidence that plaintiff started to leave defendant's train, on which she was a passenger, at her destination, while the train was opposite the passenger depot platform, as soon as the train stopped; that she proceeded at once to the platform of the car, from her seat, near the door; that the train started within a few second after its arrival; that plaintiff did not know the train had started till she reached the platform of the car, and had descended to the second of the three steps thereof; that she then sought to return to the train; that she was incumbered with a bundle, and, in attempting to turn around, became dizzy, and fell backward from the car. *Held* error to direct a verdict for defendant, on the ground of contributory negligence.

2. SAME—ALLOWING TIME TO ALIGHT FROM TRAIN.

   Defendant carrier, by receiving plaintiff as a passenger for compensation, assumed the duty to safely transport her to her destination, to notify her of the arrival of the train at her destination, and to give her sufficient time to alight.

3. SAME—ENTERING OR LEAVING MOVING CAR.

   A passenger may be justified by stress of circumstances in leaving, but not in getting on, a moving train.

Appeal from circuit court, Orleans county.

Action by Margaret Mahar against the New York Central & Hudson River Railroad Company for injury to plaintiff on defendant's train. Verdict was directed for defendant. From an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

Stanley E. Filkins, for appellant.

Charles A. Pooley, for respondent.

WARD, J. On the 18th of February, 1894, the plaintiff, a lady of about 56 years of age, about noon of that day, purchased a ticket at Lyndonville, Orleans county, N. Y., a station on the Rome, Watertown & Ogdensburg Railroad, a railroad operated by the defendant, for her home, at County Line, a station on this railroad, four miles west of Lyndonville, and entered the defendant's passenger train, consisting of a smoking car and a chair car, in the rear of the smoker. She took a seat in the chair car, two seats from the door, at the forward end of the car. The conductor of the train came through, and took up her ticket. She testified upon the trial of this action substantially as follows:

"When I arrived at County Line, the train stopped. That station was not announced by any one. I had a little bundle with me. When the train stopped, I got up to go out, and the conductor did not come. I opened the door, and I went out on the platform, and I stepped down. I held the railing with my right hand, and went down on the platform, and I went on the second step; and I saw nobody there. I looked down, and saw the ground was moving. I thought to myself how that train must be going. I looked up, and saw the train was going. I didn't know what to do, and I says to myself, 'I will have to go back and stay, and come up to Somerset [the next station west], and go back on the other train.' Well, I turned then, and held me with this hand [showing]; and I turned this way, to go back into the train;

and I looked again, and I saw the ground was going pretty fast. Well, I don't know what did happen then. I don't remember whether I got dizzy, ·or whether I gave a false step, or what I did do, but it seems as if something took me out in the air, and I fell from the top of the train. When I went to ·the ground, I says, 'The Lord have mercy on me; I guess I am killed!' I remember of saying that word, and that is all I did remember, but I had the bundle still in my hand, and that flew off out of my hand. * * * I held on the rail with my right hand before I fell. I held it in my right hand, and turned this way [indicating], to catch hold of this rail this side, to help myself back ·up into the train."

## On her cross-examination she says:

"I was watching for the train to stop, so I could get out. * * * I sat by the window in the car, and saw the station as the train approached it, and the ·train began to slow up before it got there. I did not get up out of my chair before the train stopped. I didn't wait very long. I got up just as quick as it ·stopped. I went out of the west end of the car, onto the platform. * * * I got no indication that it started up again, none whatever; and the first I ·noticed anything about it moving was after I got down ·to the second step. I saw the ground moving. There were three steps on the car. I was on the ·second one, and there was the first time I noticed the train got to be moving. I did not notice it start. I could know if the train was moving or not. The ·first time I noticed the train was moving, it could not have been moving very fast. I could not tell how fast. It kept moving faster. I didn't step up ·onto the platform. I went to turn around to go onto the platform. I was going to take hold of the railing on the other side, so as to hold onto it with my hand until I could go up. I had hold of this side of the railing [indicating], ·and then I was turning this way, to take hold of it this side, and let go with both hands. I let go. I didn't have hold of anything with either hand when I was turning around there. I didn't step up on to the next step. I did not ·get up on to the platform. * * * I knew the car hadn't started. I knew the ·car wasn't starting when I left my seat. I know I was out of the door, and went down on the platform, when I looked at the ground, and it was moving. * * * I can't tell when the car started. I only know it was standing still ·when I got up."

## Then she adds:

"I thought I must have been dizzy. I did become dizzy. I felt as though ·I was going from the top of the train. · I fell at that time. In turning around, I let go of the handle with this hand [indicating], and turned around to go back into the train. I turned around while standing on the second step, with ·a bundle in my left arm, and let go with my right hand, that I had hold of the rail, and then it was that I fell off."

Helen M. Hall, a witness for the plaintiff, was in the same car with the plaintiff at the time of the accident. She observed the plaintiff ·as they pulled into the County Line station, and says:

"I did not think the train stopped, but I guess it did. I think it did. It must have stopped. It did not stop more than two or three seconds. I observed the plaintiff at that time. She got up, and left her seat, and walked towards the door. Q. At what time did she get up and leave her seat with reference to the time of stopping the train? A. Well, if the train stopped, she must have gotten out of her seat as soon as it stopped. Q. What did you ob-·serve? A. That is what I observed. She started for the door, and the next I saw some gentleman jumped up, and said there was a woman fallen off the train. * * * She went towards the west end of the train, and passed out ·of the door. I saw her pass out of the door. Q. When did you first observe or know that the train was in motion after it stopped? A. I didn't know it was in motion at all. It started so imperceptibly. * * * I noticed the ·train was in motion when the man called out that the woman had fallen off ·the train, because he pulled the bell cord. As we approached that station, it was not announced in that car. It may have been announced before they ·reached Lyndonville, but it certainly was not after we passed Lyndonville."

On her cross-examination, she said:

"If the train did stop, it did not stop only a few seconds. It was so short a time that I did not know that the train had stopped. It was not long enough for a person to get up, and walk out, and get off the train."

Again, she says (speaking of the plaintiff):

"I saw her go through the door, and go out on the platform. I saw her stand there. I think the train was standing still when she went through the door."

James Golden, another witness for the plaintiff, testified that he saw the plaintiff on the train seated pretty well towards the west end of the car. He occupied a seat a seat or two behind the plaintiff, and he testified:

"I observed the approach of the train to that station [County Line] when it slowed up. That station was not announced in our car. The train stopped at the station just; merely stopped, you might say. It was a stop, and that was all. I looked out of the window when the train stopped. We moved ahead right away again; and when we came along in front of the station after we passed, that I turned my head around, and saw this lady [the plaintiff] on the platform. There was but one stop of the train at that station before the plaintiff was injured."

Again, he says:

"I saw her [plaintiff] after the train had started again. I saw her out on the platform. She was standing. She was trying to get down the steps, as I thought. When I first turned around my head, I saw her, and the train was moving. She tried to go down the steps. The train was starting up pretty well. * * * I could not say how long they stopped; not over a second or two. They started up very slow. Could hardly observe they were moving."

Daniel Fermoil, another witness for the plaintiff, testified that he was visiting at the time the plaintiff's house, at County Line, and was expecting her home on that train, and was at the depot to meet her when the train came in. He says:

"I can hardly say how long it stopped there, probably half a minute, and may be not as long as that. It just merely came to a stop, and started up. * * * I observed somebody get off the train at that station. * * * The conductor got off ahead of him. He [conductor] came out of the door ahead of him, and stepped off, and this man stepped off behind him. That is all I noticed that got off, and then he [conductor] waved the train ahead, and got back on, and went into the smoking car. * * * He stepped off the train very near the same time the train stopped. He was out there, and also this passenger, who had alighted when the train drew in. He was on the ground before he waved the train ahead, just long enough to let the other man off, and then stepped right on again. He waved the train ahead, and stepped right on, and went into the smoking car. * * * The train started out swift, as any train usually does out of the place. It started very slow, and kept going faster. When I first saw her [the plaintiff], she was just about leaving the car. Her back was towards me, and I could not see her face. I could see her head and shoulders. I didn't notice her feet. She came off the train backward, and she struck kind of on her right side and head at the same time."

The defendant's engineer on the train testified that the time for the arrival of that train at County Line was 12:31 p. m., as was also its leaving time, as appeared on time schedule which the defendant had furnished him. This was not a regular stopping place for the train; the train only stopping when it had passengers to let on or off

at that station; the engineer stopping the train upon a signal from the conductor, so that whatever time was consumed at this station had to be either gained on approaching it from the east, or, after the train had passed the station, it had to be made up. He further testified that, on approaching the station, he took out his watch, and the fireman asked him what the time was, and he told him he was dead on time. The conductor of the train testified that he stepped off the train, and was standing there with one Murray; that he pulled out his watch, and looked at it, and saw that they were four or five seconds ahead of time, and adds:

"And we stood talking there until the time was pretty near up, and I hallooed out, 'All aboard!' and also hallooed to the agent, and asked him if everything was right, and he answered back, 'Yes,' and I gave him the signal to go ahead, as our time was up. We stopped there, I should take it, about between forty-five and fifty seconds."

The station agent testified that the train left on time that day. Considerable evidence was given as to the length of time the train stopped. It does not appear that any of the officers of the train sought in any way to assist the plaintiff in alighting, or were present when she attempted to alight. The conductor does not seem to have seen the plaintiff at all after leaving Lyndonville, from his statement, except when he passed through the train, and took up the tickets.

Upon this review, the most favorable view must be taken of the evidence in the plaintiff's behalf that the evidence will justify. Hanover Nat. Bank of City of New York v. American Dock & Trust Co. (N. Y. App.) 43 N. E. 72. Enough evidence has been referred to, to enable us to judge as to whether there was evidence sufficient to take the case to the jury upon the pivotal questions in the case of the negligence of the defendant and of the plaintiff. The learned trial judge directed a verdict for the defendant, because the plaintiff was guilty of contributory negligence, and hence could not recover. He seemed to have assumed that there was sufficient proof of defendant's negligence to go to the jury. A brief statement of the reciprocal duties and obligations of the defendant as a carrier and the plaintiff as a passenger may be permitted in considering the question before us.

The defendant, for a compensation, received the plaintiff on its passenger train, as a common carrier, and thereby assumed the obligation of active vigilance and great care to safely transport the plaintiff to her place of destination. When she arrived there, it was the duty of the defendant to announce that fact in the car in which she was, or to give her personal notice of the fact. When that notice was given, and the train stopped, sufficient time should be given her to safely alight from the train. Being upon the train, it was the passenger's right at her point of destination to leave the train, and the cases recognize the manifest distinction between the case of a passenger getting on and off a moving train. In the latter case the act may be justifiably excused by necessity, or what is termed a "stress of circumstances," that cannot exist in the former. Keller v. Railroad Co., 2 Abb. Dec. 480; Filer v. Railroad Co., 49 N. Y.

47; McDonald v. Railroad Co., 116 N. Y. 546 (opinion, 549), 22 N. E. 1068; Lewis v. Canal Co., 145 N. Y. 517, 40 N. E. 248. The cases cited by the learned counsel for the defendant do not meet the facts in the case at bar. In Morrison v. Railway Co., 56 N. Y. 302, the plaintiff was an infant of 12 years of age, in charge of her father. While the train was in motion, to the knowledge of the father, he took the plaintiff in his arms, and stepped off the car, and fell, and the plaintiff was injured. In Burroghs v. Railway Co., 63 N. Y. 556, a notice had been posted in the car forbidding passengers getting on and off while the cars were in motion. The train stopped at the station where the plaintiff wished to get off, but, before she got to the platform of the car, the train started, notwithstanding that she attempted to leave the car by the aid of another, and was injured. In Solomon v. Railroad Co., 103 N. Y. 437, 9 N. E. 430, the plaintiff's intestate attempted to board an elevated railway train in New York after the train had started, and conductor had given the signal to start, and had closed the gates. In Hunter v. Railroad Co., 126 N. Y. 18, 26 N. E. 958, the deceased, under dangerous conditions, attempted to board a moving train. In all these cases the court held, as a matter of law, that the plaintiff or the deceased whom the plaintiff represented was guilty of contributory negligence.

We are brought now to the consideration of the question as to when the question of contributory negligence must be submitted to the jury. The courts have been struggling with this question for a century in this state, and the rule governing it has been repeatedly laid down. There seems to be no difficulty about the rule, but the difficulty arises in its application. That difficulty we are confronted with in this case. Nevertheless, it is well to refer now and then, when we wish to take our bearings in these negligence cases, to the fundamental rule governing them, and the reasons for that rule.

In Willis v. Railroad Co., 34 N. Y. 670–679, which was a negligence case, where the question we are considering was raised, Judge James C. Smith says:

"The wisdom of the time-honored rule of the common law which refers questions of fact to the jurors, and questions of law to the judge, is not more conspicuous in any class of civil cases than in those which involve questions of negligence. Cases of that nature frequently come before the courts in which men of equal intelligence and judgment differ in their conclusions, simply because they differ in experience and habits. in temperament or mental organization. A course of conduct which seems sufficiently careful to a self-reliant man who is accustomed to act promptly may appear reckless to one who is unusually circumspect or hesitating. That average judgment which is the result of the deliberations of twelve men of ordinary sense and experience is recognized by our jury system as a juster standard than the judgment of one man of equal experience and sense in the determination of questions of fact, and it is especially valuable in the decision of questions of negligence. On the trial of an issue of that nature, if there is any doubt, however slight, either as to what facts are established by the testimony, or as to the conclusion in respect to the fact of negligence that may be drawn legitimately from the circumstances proved by the average of men of common sense, ordinary experience, and fair intention, the case should not be taken from the jury. It is only where the case is entirely clear upon the testimony, where there is no room for rational doubt either as to the circumstances proved or as to the conclusions of fact which may properly be drawn from them, that the judge is justified in deciding a question of negligence as a matter of law."

Or, to condense the rule as thus stated, the marginal note in Keller v. Railroad Co., supra, well states the rule laid down by the court as follows:

"In cases of negligence, if the facts are so clear and decided that the inference of negligence is irresistible, it is the duty of the judge to decide it; but, when the facts or the inferences to be drawn from them are in any degree doubtful, the only proper rule is to submit the question to the jury under proper instructions."

The rule thus laid down, the learned reporter of the last case cited, in a note to page 481, states, has since been sustained by a large number of cases, which are there named, to which may be added Bailey v. Railroad Co., 139 N. Y. 306, 34 N. E. 918; Schwier v. Railroad Co., 90 N. Y. 560; and Stackus v. Railroad Co., 79 N. Y. 466, where Church, C. J., says:

"The importance of the case arises chiefly from the necessity of keeping the dividing line between questions of law, which belong exclusively to the court, and questions of fact, which belong to the jury, to determine, well defined and understood. Upon the plaintiff's evidence, it is not denied but the jury would have been justified in finding negligence on the part of the defendant's agents and employés. The plaintiff was nonsuited upon the trial, upon the ground that he was guilty of negligence which contributed to the injury. To justify this, the negligence must appear so clearly that no construction of the evidence or inference drawn from the facts would have warranted a contrary conclusion, and that a verdict of the jury the other way would have been set aside as against the evidence."

Without intending to express any opinion upon the weight of the evidence which may affect a jury upon another trial, we will proceed, in the light of the rule above laid down, to consider whether there was evidence developed upon the trial of this case sufficient to carry the case to the jury upon the question of the plaintiff's contributory negligence. There was evidence in the case at bar for the jury to consider to the effect that the plaintiff started to leave the train at her point of destination, while the car was opposite the passenger depot platform, as soon as the train stopped; that she proceeded at once to the platform; that the train started within a few seconds after its arrival; that the plaintiff did not know that the train had started until she reached the platform, and had descended to the second step of the three platform steps, when she discovered that the train was in motion; that then she did not attempt to alight, but prudently sought to return to the car that she had left; that she was incumbered with a bundle, and, in her attempt to turn around and go back into the car, she became dizzy, and fell backward, off the car, and was injured. The testimony of the other witnesses cited tended to corroborate her statement,—the two passengers in the train, whose testimony is above given, and the witness at the depot, who saw the plaintiff fall off the car backward. The trial judge, in his opinion, reviewing to some extent the evidence in this case, seems to attach importance to the evidence of the witness Spaulding. This witness stated that he did not hear the station of County Line announced in the car before it reached there; that he saw the plaintiff leave her seat, and, as she got to the car door, he noticed the train was moving; how fast he could not tell. He thinks the train stopped a half a minute, perhaps not as long. Spaulding's

evidence, if important, does not show that the plaintiff was aware that the train was moving, as it may have been moving so slowly as to be almost imperceptible, as stated by the very important witness Helen M. Hall, whose evidence is above given. She says, after speaking of the plaintiff's going out on the platform:

"I did not know it was in motion at all. It started so imperceptibly. I noticed the train was in motion when the man called out that the woman had fallen off the train."

The testimony of this witness was not referred to in the trial judge's opinion. He seems to have overlooked it, as he says:

"The uncontradicted evidence of the plaintiff's witnesses is that the plaintiff remained in her seat until about the time the train started; that the train was under motion when she reached the door; and that she continued on her way after the train was in motion."

It is difficult to see how this conclusion could be reached as a matter of law, in the face of the evidence in this case. The jury, in determining the question of contributory negligence, could consider how long the train in fact did stop at the County Line. If but from two to four seconds, or only long enough for the conductor to step out of the smoking car, in his quick and practiced way, and wave for the train to start, as considerable of the evidence indicates, it would have an important bearing upon the question of contributory negligence, and whether the plaintiff in fact knew that the train was under way. She had the right to believe that time would be given her to leave the train in safety. She was not obliged to watch and see if so unusual a thing would transpire as that the train would leave immediately upon stopping. As there was no announcement of the stop at the station, she could not be expected to be on the alert to see whether the station was reached until notified by the actual stopping of the train. Then she immediately arose, and, assuming that the train would remain long enough for her to alight in safety, proceeded to the door and to the platform, the proper place of exit from the train. Including herself, there were four witnesses sworn who were in the car when the plaintiff made her exit, and but one of them (Spaulding) swears that the train was moving so as to be noticeable before the plaintiff reached the platform. The fact that there was no schedule time for the stopping of this train at this station is important to consider upon the question as to how long the train actually did stop. The desire of the managers of a train to be on time is well understood. There seems to have been no business to be done at this station except simply to let off passengers. Therefore, there was nothing to detain beyond that duty. The witnesses in the case expressed opinion as to the length of time the train stopped, varying from 2 to 50 seconds; but the evidence of the timepieces of the conductor, engineer, and station agent indicates a very short stop. The engineer's watch makes the train arrive dead on time. The station agent's watch makes it depart on time. The conductor, in looking at his watch, said they arrived four or five seconds ahead of time, and departed on time. From the whole evidence, the question of time was for the jury. It should be remembered that the plaintiff sat only a few feet from the car door.

Two or three steps would take her to the platform. The jury might conclude that Mr. Spaulding was mistaken, in the face of the other testimony, in supposing that he saw the car was in motion, so as to be perceptible, during the time the plaintiff was taking those few steps. The cases cited by the defendant's counsel, and above referred to, do not apply to the case at bar, for the reason that in all those cases the injured party was attempting to either board or alight from a train when it was moving. In this case the plaintiff was not attempting to alight from the train when she discovered that it was moving, but was seeking to return to the car as a place of safety. Whether, in her attempt to save herself in her perilous situation, she did what a cool and prudent person would have done under all the circumstances of the case, is unimportant, for it is well settled that where, through the negligence of the defendant, the party seeking to recover damages is put in peril, the strict rule of prudence and discretion is not applied to a person thus situated. Mirirowski v. Railway Co., 124 N. Y. 420, 26 N. E. 1023. And yet it is difficult to see, under all the circumstances of the case, if the plaintiff's version is to be taken, and that of her witnesses, how she was imprudent. From a review of the evidence in this case, it would seem to be clear that the question of contributory negligence, as well as that of the defendant's negligence, should have been submitted to the jury.

The cases that have been called to our attention that have been decided in this state are not exactly parallel to this in their facts, but they tend to sustain the position here assumed, and are as follows: Willis v. Railroad Co., 34 N. Y. 670; Filer v. Railroad Co., 49 N. Y. 47; Keating v. Railroad Co., Id. 673; Keller v. Railroad Co., 2 Abb. Dec. 480; Lewis v. Canal Co., 145 N. Y. 508, 40 N. E. 248; Richmond v. Railroad Co. (Sup.) 27 N. Y. Supp. 780; Onderdonk v. Railway Co., 74 Hun, 42, 26 N. Y. Supp. 310.

Reference may also be had to cases decided in other states that bear directly upon the question before us, where the headnotes are as follows:

"Whether alighting from a moving street car is negligence is a question for the jury." Railway Co. v. Craig (Neb.) 58 N. W. 209.

"The court cannot say it is a passenger's duty to promptly leave the car on the arrival of a train as soon as it comes to a stand." Railroad Co. v. Byrum, 48 Ill. App. 41.

"In an action for personal injuries caused by defendant's negligence, it appeared that plaintiff was a passenger on defendant's train; that at the station where the plaintiff wished to leave the train, while in the act of alighting, she was thrown from the steps of the car platform, by a sudden backward movement of the train. Witnesses for the plaintiff testified that she was not on the platform when the cars stopped, and did not leave her seat until afterwards, and that it was from half a minute to a minute after the train stopped before it started back. The engineer testified that, when the train stopped, he immediately reversed the engine, and moved the train back. Held, that the question of contributory negligence was for the jury." Morgan v. Southern Pac. Co., 30 Pac. 601, 95 Cal. 501.

Carr v. Railroad Co. (Cal.) 33 Pac. 213.

"Where plaintiff in an action against a street-railway company for damages testifies that he was standing on the lower step as the car slackened up to

let him off, and was holding on with one hand, and was standing on one foot, preparatory to getting off. when he fell, the fall, as he alleged, being due to the starting of the car at an increased rate of speed before he could alight, the question of his contributory negligence is for the jury." Linch v. Traction Co., 25 Atl. 621, 153 Pa. St. 102.

"The plaintiff started to leave the car as soon as the train stopped at the station. When she reached the platform, she found that the train was moving, and she fell off, and was injured. The brakeman who should have been at the platform assisting passengers to alight had run forward, and given the signal to start. Held, that the company was guilty of negligence." Leggett v. Railroad Co. (Pa. Sup.) 21 Atl. 996.

It was held in the case last cited as follows:

"It is proper to instruct the jury that, while it is negligence per se for a passenger to alight from a moving train, yet if the defendant did not stop at the station a sufficient time to enable plaintiff to alight with safety, and she left the car with reasonable expedition and care, and did not discover that the train was in motion until she came to the steps of the platform, and was descending them, then her position of danger was occasioned by the negligence of the defendant; and if the danger was so sudden that she had no time to deliberate and choose between the danger of remaining on and stepping off, and under all the circumstances she acted according to her best judgment, then she is free from fault."

The evidence of the plaintiff in the case at bar points to a case parallel in all its essential features to the one last quoted. The conductor and the brakeman were both sworn upon the trial of this case, but neither of them testified as to their being at the car at the time that the plaintiff sought to alight; and the evidence clearly establishes that, when the plaintiff sought to descend from the car, there was no one to assist her.

We have reached the conclusion that the order appealed from should be reversed, and that a new trial should be granted, with the costs to abide the event. All concur.